**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

PHARMACANN PENN, LLC     :
             :
    Plaintiff     :  CIVIL ACTION
             :
    v.       :  Case No. 2:17-cv-04625-GEKP
             :
BV DEVELOPMENT SUPERSTITION RR, LLC; :
FRANKLIN MILLS RESIDUAL LIMITED  :
PARTNERSHIP f/k/a LIBERTY MILLS   :
RESIDUAL PARTNERSHIP; SIMON    :
PROPERTY GROUP, INC.; FRANKLIN MILLS :
ASSOCIATES LIMITED PARTNERSHIP f/k/a :
LIBERTY MILLS LIMITED PARTNERSHIP;  :
and WESTERN FRANKLIN MILLS    :
CORPORATION        :
             :
    Defendants.    :
_____ :

**ORDER**

   AND NOW this ___ day of _____ 2017, upon consideration of Defendants

Franklin Mills Residual Limited Partnership f/k/a Liberty Mills Residual Limited Partnership,

Simon Property Group, Inc., and Franklin Mills Associates Limited Partnership f/k/a Liberty Mills

Associates Limited Partnership's Motion to Dismiss Plaintiff PharmaCann Penn, LLC's

Complaint, and any response thereto, it is hereby ORDERED that the Motion to Dismiss is

GRANTED and Plaintiff's Complaint is hereby DISMISSED.

          BY THE COURT:


          _____
          PRATTER, GENE E. K., J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHARMACANN PENN, LLC | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | Case No. 2:17-cv-04625-GEKP |
| | : | |
| BV DEVELOPMENT SUPERSTITION RR, LLC; | : | |
| FRANKLIN MILLS RESIDUAL LIMITED | : | |
| PARTNERSHIP f/k/a LIBERTY MILLS | : | |
| RESIDUAL PARTNERSHIP; SIMON | : | |
| PROPERTY GROUP, INC.; FRANKLIN MILLS | : | |
| ASSOCIATES LIMITED PARTNERSHIP f/k/a | : | |
| LIBERTY MILLS LIMITED PARTNERSHIP; | : | |
| and WESTERN FRANKLIN MILLS | : | |
| CORPORATION | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS FRANKLIN MILLS RESIDUAL LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC. AND FRANKLIN MILLS ASSOCIATES LIMITED PARTNERSHIP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Franklin Mills Residual Limited Partnership f/k/a Liberty Mills Residual Limited Partnership, Simon Property Group, Inc., and Franklin Mills Associates Limited Partnership f/k/a Liberty Mills Associates Limited Partnership, by and through their undersigned counsel, hereby Move to Dismiss the Complaint of Plaintiff PharmaCann Penn, LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated in Defendants' accompanying Memorandum of Law, incorporated here by reference, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

Dated: October 24, 2017

**BLANK ROME LLP**

By: */s/ Lewis W. Schlossberg*
James T. Smith, Esquire
Evan H. Lechtman, Esquire
Lewis W. Schlossberg, Esquire
I.D. Nos. 39933, 89845 & 91773
One Logan Square
Philadelphia, PA 19103

(215) 569-5500

*Attorneys for Defendants Franklin Mills Residual Limited Partnership f/k/a Liberty Mills Residual Limited Partnership, Simon Property Group, Inc., and Franklin Mills Associates Limited Partnership f/k/a Liberty Mills Associates Limited Partnership*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHARMACANN PENN, LLC | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | Case No. 2:17-cv-04625-GEKP |
| | : | |
| BV DEVELOPMENT SUPERSTITION RR, LLC; | : | |
| FRANKLIN MILLS RESIDUAL LIMITED | : | |
| PARTNERSHIP f/k/a LIBERTY MILLS | : | |
| RESIDUAL PARTNERSHIP; SIMON | : | |
| PROPERTY GROUP, INC.; FRANKLIN MILLS | : | |
| ASSOCIATES LIMITED PARTNERSHIP f/k/a | : | |
| LIBERTY MILLS LIMITED PARTNERSHIP; | : | |
| and WESTERN FRANKLIN MILLS | : | |
| CORPORATION | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS FRANKLIN MILLS RESIDUAL LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC. AND FRANKLIN MILLS ASSOCIATES LIMITED PARTNERSHIP'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Franklin Mills Residual Limited Partnership f/k/a Liberty Mills Residual Limited Partnership ("Franklin Mills Residual"), Simon Property Group, Inc. ("Simon"), and Franklin Mills Associates Limited Partnership f/k/a Liberty Mills Associates Limited Partnership ("Franklin Mills Associates"), by and through their undersigned counsel, respectfully submit the following Memorandum of Law in Support of Their Motion to Dismiss the Complaint of PharmaCann Penn, LLC ("PharmaCann"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

In this action, PharmaCann seeks declaratory and equitable relief allowing it to operate a medical marijuana dispensary on the property (the "Property") identified in the Special Warranty Deed attached as Exhibit A to the Complaint (the "Special Warranty Deed"). The Property, formerly a Chi-Chi's restaurant adjacent to the Philadelphia Mills mall, is subject to a number of

deed restrictions, including, but not limited to prohibitions on any activity or use which is unlawful, as well as prohibitions on the operation of any drug store on the Property. PharmaCann purchased the Property on October 6, 2017 and has filed the instant action to obtain an order from this Court allowing it to operate a marijuana dispensary on the Property, notwithstanding the deed restrictions set forth in the Special Warranty Deed. For the following reasons, PharmaCann's Complaint must be dismissed.

First, as Pennsylvania law has long held, restrictive covenants on land are legally enforceable. The restrictive covenant on the Property prohibiting any activity or use which is unlawful is therefore clearly enforceable against PharmaCann as a purchaser of the Property. Moreover, federal law plainly forbids the operation of a medical marijuana dispensary. Pursuant to the Controlled Substances Act, 21 U.S.C.S. § 801 *et seq*., marijuana is a schedule I controlled substance. As such, the distribution of marijuana remains illegal under federal law even where its purpose is stated to be purely medical in nature. Thus, even though 25 states, including Pennsylvania, have legalized marijuana for medical reasons, the distribution of marijuana remains unlawful under federal law, and, pursuant to the Supremacy Clause of the United States Constitution, if there is any conflict between federal law and state law, federal law prevails. Because PharmaCann concedes that it intends to engage in the unlawful distribution of marijuana on the Property, PharmaCann is not entitled to a declaratory judgment permitting it to operate a medical marijuana dispensary on the Property in violation of the deed restrictions on the Property.

Second, the declaratory and equitable relief PharmaCann seeks in this action to eliminate the deed restriction prohibiting the operation of any "drug store" on the Property, must be denied as moot. Given that PharmaCann's proposed medical marijuana dispensary is impermissible because it violates the deed restriction on the Property prohibiting "any activity or use which is unlawful," whether it also violates the deed restriction prohibiting any "drug store" on the Property

will not afford PharmaCann any relief in this action. Thus, PharmaCann's request for an order eliminating the "drug store" deed restriction from the Special Warranty Deed is moot.

Accordingly, because PharmaCann's proposed marijuana dispensary is illegal under federal law and plainly violative of the deed restrictions set forth in the Special Warranty Deed, PharmaCann's Complaint must be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    BACKGROUND

### A.    <u>PharmaCann's Lawsuit.</u>

On or about September 20, 2017, PharmaCann filed a Complaint in the Philadelphia County Court of Common Pleas against Franklin Mills Residual, Simon, Franklin Mills Associates, BV Development Superstition RR, LLC ("BV"), and Western Franklin Mills Corporation. Defendants Franklin Mills Residual, Simon, and Franklin Mills Associates thereafter removed the matter to this Court pursuant to the Court's diversity jurisdiction. PharmaCann's Complaint asserts claims exclusively for non-monetary relief, including a claim for declaratory judgment (Count I) and a claim for quiet title (Count II). <u>See</u> Ex. A, Compl. The requested relief relates to the Special Warranty Deed. <u>Id.</u> PharmaCann intends to develop a "medical marijuana dispensary" on the Property. <u>See</u> Ex. A, Compl. ¶ 17. PharmaCann seeks declaratory and equitable relief permitting it to engage in this venture notwithstanding the deed restrictions set forth in the Special Warranty Deed.

In Count I of its Complaint for a Declaratory Judgment, PharmaCann seeks an order: "(a) declaring that the operation of medical marijuana dispensary in conformity with Pennsylvania law is not 'unlawful' as defined in the 'Prohibited Uses' of the Deed Restrictions contained in the Special Warranty Deed; (b) declaring that the operation of medical marijuana dispensary is lawful assuming that PharmaCann complies fully with the Act and all related regulations; (c) declaring that that the operation of medical marijuana dispensary is not considered to be a 'drug store' as

3

defined in the 'Prohibited Uses' of the Deed Restrictions contained in the Special Warranty Deed; and (d) granting such other relief as the Court deems appropriate." See Ex. A, Compl. at 11-12.

In Count II of its Complaint for Quiet Title, PharmaCann seeks an order: "(a) invalidating as a 'Prohibited Use' the 'drug store' Deed Restriction contained in the Special Warranty Deed; (b) striking the 'drug store' limitation as a 'Prohibited Use' as contained in the Deed Restrictions in the Special Warranty Deed; (c) permitting PharmaCann to record with the Philadelphia Department of Records a copy of any Order quieting title in its favor; and (d) granting such other relief as the Court deems appropriate." See Ex. A, Compl. at 12-13.

As set forth below, PharmaCann is not entitled to the relief it seeks in this action.

**B. Philadelphia Mills.**

The property described in the Special Warranty Deed, located at 599 Franklin Mills Circle, Philadelphia, Pennsylvania 19154 (the "Property"), is part of the Franklin Mills shopping complex, now known as Philadelphia Mills, which Simon owns and operates through corporate intermediaries. Ex. A, Compl. ¶ 11. Philadelphia Mills is Philadelphia's largest outlet and value retail shopping mall with more than 200 stores, a movie theatre, two food courts, and seven theme restaurants.

**C. The Special Warranty Deed Prohibits Uses Inconsistent With The Family-Oriented Nature Of Philadelphia Mills.**

As set forth in the Special Warranty Deed, the Property was sold by Defendant Franklin Mills Residual (Grantor) to non-party Chi-Chi's U.S.A., Inc. (Grantee), on October 18, 1991, for the purpose of allowing Chi-Chi's to construct and operate "a full service sit-down Mexican restaurant" next to the mall. Ex. A, Compl., Special Warranty Deed, at D 1981 243. It was understood and agreed at the time, however, "that the Property is part of a much larger project that encompasses certain neighboring and adjoining properties (the 'Development')… which is being developed in large part by Grantor and certain related entities of Grantor." Id. Thus, it was

understood and agreed in the Special Warranty Deed that "[a]fter conveyance of the property to Grantee, Grantor and its related entities… will continue to have a substantial interest in the ownership and operation of numerous properties within the Development." Id. It was further understood and agreed that "Grantor desires to ensure that the Property will be used in a manner consistent with the plans and design of Grantor and not in a manner that would injure or adversely affect the other properties or operations in the Development." Id. To facilitate this, the parties agreed to place a number of specific deed restrictions on the Property to ensure its use would remain consistent with the operation of Philadelphia Mills as a family-oriented shopping, dining and entertainment destination. Id.

The Special Warranty Deed specifically reflects that the deed restrictions were intended, among other things, to ensure the continued use of the Property consistent "with the use and operation of the Development as a family-oriented shopping center." Ex. A, Compl., Special Warranty Deed, at D 1981 252. To that end, the Special Warranty Deed set forth 28 different "Prohibited Uses" of the Property, including among others:

- Any activity or use which is unlawful or conflicts with or violates the Development Agreement;

- Any use which emits or results in an obnoxious odor, noise or sound which may constitute a public or private nuisance…;

- Any use which is physically damaging to other portions of the Development or which creates dangerous hazards;

- Any operation primarily used as a warehouse;

- Drug store (i.e., a store used for the sale and display of drugs, pharmaceutical, health and beauty aids, and/or other such similar items).

Ex. A, Compl., Special Warranty Deed, at D 1981 252-253.[1]

---

[1] Numerous other uses of the Property were similarly excluded to protect and preserve the character of the Development "as a family-oriented shopping center." Id. These included a total ban on any: mortuary; flea market; establishment selling or exhibiting pornographic material; night club;

As set forth in the Special Warranty Deed: "All of these Deed Restrictions shall be ***covenants running with the land*** which constitutes the Property and binding and benefitting the heirs, representatives, successors and assigns of, and persons claiming by, through, or under, the parties hereto (collectively, 'successors')". Ex. A, Compl., Special Warranty Deed, at D 1981 251 (emphasis added). The Special Warranty Deed further provided "[a]ll such Deed Restrictions shall be specifically enforceable against Grantee and Grantee's Successors as the owner of the Property from time to time, and shall inure to the benefit of and be enforceable by Grantor and its Successors as the owners and/or possessors of adjacent or neighboring properties." Id.

### D. PharmaCann Seeks To Operate A Marijuana Dispensary On The Property In Violation Of The Deed Restrictions Set Forth In The Special Warranty Deed.

PharmaCann asserts that Chi-Chi's conveyed the Property to BV via Quitclaim Deed on September 8, 2005. Ex. A, Compl. ¶ 15. PharmaCann concedes that BV knowingly acquired the Property subject to all of the deed restrictions set forth in the Special Warranty Deed. Id. at ¶ 14 ("During the time of the sale to Chi-Chi's, the Property was subject to certain Deed Restrictions and other covenants contained in the Special Warranty Deed — all largely because the Property was part of and subject to the overall development of Philadelphia Mills."). On October 6, 2017, PharmaCann purchased the Property from BV for the express purpose of developing a "medical marijuana dispensary" on the Property. See Ex. A, Compl. ¶ 17. As with BV's purchase of the Property, PharmaCann knowingly purchased the Property subject to all of the deed restrictions set forth in the Special Warranty Deed. Id.

Notwithstanding the deed restrictions in the Special Warranty Deed, PharmaCann applied to the Commonwealth of Pennsylvania for a medical marijuana dispensary permit, identifying the Property as its intended "principal dispensary location" for its marijuana-based products. Id.

---

pool or billiard hall; bowling alley; or video, pinball and/or amusement arcade, among other things. Id.

Specifically, PharmaCann indicated it intends to dispense marijuana-based "vape, oils, tinctures and creams" on the Property. <u>See</u> Ex. A, Compl. ¶ 43. PharmaCann alleges that it is entitled to dispense such marijuana products on the Property purportedly because it "is not 'unlawful' for purposes of an outdated deed restriction." <u>Id</u>. at ¶ 46.

As set forth below, however, the deed restrictions set forth in the Special Warranty Deed clearly prohibit such activities on the Property. Consequently, PharmaCann is not entitled to the relief it seeks in this action.

## III.    ARGUMENT.

### A.    <u>Legal Standard.</u>

"A complaint may be dismissed for 'failure to state a claim upon which relief can be granted.'" <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220 (3d Cir. 2011) (quoting Fed. R. Civ. P. 12(b)(6)). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Burtch</u>, 662 F.3d at 220 (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

"The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>." <u>Burtch</u>, 662 F.3d at 220 (citing <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 556 U.S. at 678). "The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'" <u>Burtch</u>, 662 F.3d at 220. "A complaint satisfies the plausibility standard when the factual pleadings allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. "This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'" <u>Id</u>. at 221. "A complaint which pleads facts merely consistent with a defendant's liability, stops short of the

line between possibility and plausibility of entitlement of relief." Id. (citing Twombly, 550 U.S. at 557). To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Burtch, 662 F.3d at 221 (citing Santiago v. Warminster Twp., 629 F.3d 121,130 (3d Cir. 2010)).

On a motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007). Thus, "[i]n addition to the complaint itself, the court can review documents attached to the complaint and matters of public record." McTernan v. City of York, Pa., 577 F.3d 521, 526 (3d Cir. 2009).

**B.      PharmaCann's Request For A Declaratory Judgment That Its Planned Operation Of A Medical Marijuana Dispensary Is Not Unlawful Must Be Dismissed Because Federal Law Expressly Prohibits Such Activities As Do The Deed Restrictions Set Forth In The Special Warranty Deed.**

PharmaCann asserts that it is "entitled to a declaration by this Court that its operation of a medical marijuana dispensary is … not 'unlawful' for purposes of an outdated deed restriction." Ex. A, Compl. ¶ 46. PharmaCann thus asks "this Court to determine as a matter of law that the operation of [a] medical marijuana dispensary is lawful," notwithstanding federal law to the contrary. Id. at ¶ 58. Because the deed restrictions on the Property expressly prohibit "any activity or use which is unlawful," and federal law plainly forbids the operation of a medical marijuana dispensary, PharmaCann cannot obtain the declaratory relief it seeks in Count I of its Complaint. Accordingly, PharmaCann's request for a declaratory judgment that its planned medical marijuana

dispensary on the Property is "not unlawful" or in violation of the deed restrictions on the Property must be dismissed as a matter of law.

      **1.**      **Pennsylvania Law Recognizes Restrictive Covenants On Land And Courts Routinely Enforce Restrictive Covenants Where A Party's Actions Are In Clear Defiance Of Them**

As the Pennsylvania Supreme Court has long held, "restrictive covenants are legally enforceable." Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor, 855 A.2d 873, 879 (Pa. 2004) (citing Schulman v. Serrill, 246 A.2d 643, 647 (Pa. 1968); Todd v. Sablosky, 15 A.2d 677, 679 (Pa. 1940)). "A landowner may limit his or her private use and enjoyment of real property by contract or agreement." Vernon Twp., 855 A.2d at 879 (citing Lustig v. Facciolo, 188 A.2d 741, 743 (Pa. 1963)). "Typically, [a court] will enforce a restriction if a party's actions are in clear defiance of the provisions imposed by the covenant." Vernon Twp., 855 A.2d at 879 (citing Ratkovich v. Randell Homes, Inc., 403 Pa. 63, 169 A.2d 65, 68 (Pa. 1961).

Here, a number of restrictive covenants were placed on the Property when it was sold to Chi-Chi's in October 1991, including the prohibition on "any activity or use which is unlawful." Ex. A, Compl., Special Warranty Deed, at D 1981 252-253. This restriction and others were placed on the Property to ensure the continued use of the Property consistent "with the use and operation of the Development as a family-oriented shopping center." Ex. A, Compl., Special Warranty Deed, at D 1981 252. Moreover, as set forth in the Special Warranty Deed, it was specifically agreed that: "All of these Deed Restrictions shall be ***covenants running with the land*** which constitutes the Property and binding and benefitting the heirs, representatives, successors and assigns of, and persons claiming by, through, or under, the parties hereto (collectively, 'successors')". Ex. A, Compl., Special Warranty Deed, at D 1981 251 (emphasis added). Additionally, it was agreed that: "[a]ll such Deed Restrictions shall be specifically enforceable against Grantee and Grantee's Successors as the owner of the Property from time to time, and shall inure to the benefit of and be enforceable by Grantor and its Successors as the owners and/or

possessors of adjacent or neighboring properties." Id. Thus, the restrictive covenant on the Property prohibiting "any activity or use which is unlawful," was specifically agreed to run with the land and remain enforceable against subsequent purchasers of the Property, including PharmaCann.

Because PharmaCann is a subsequent purchaser of the Property, it is unquestionably subject to the deed restrictions set forth in the Special Warranty Deed, including the restriction prohibiting "any activity or use which is unlawful." As set forth below, PharmaCann's intended use of the Property as a medical marijuana dispensary is plainly illegal under federal law, and is therefore barred by the deed restrictions set forth in the Special Warranty Deed. PharmaCann is therefore not entitled to an order from the Court allowing it to operate a medical marijuana dispensary on the Property in violation of the deed restrictions.

### 2. Marijuana Is A Schedule I Controlled Substance Which Is Unlawful To Distribute In Any Form For Any Reason Under Federal Law

"The Controlled Substances Act provides that, 'except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.'" United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 489 (2001) (citing 21 U.S.C. § 841(a)(1)). "[M]arijuana [is] a schedule I controlled substance -- that is, one that cannot be distributed outside of approved research projects." Id. at 550. Regardless of its form, marijuana and its various byproducts and derivatives are all illegal under federal law. See 21 U.S.C. § 802(16) ("The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin."); United States v. Christie, Cr. No. 10-00384, 2010 U.S. Dist. LEXIS 72607, *17 (D. Haw July 20, 2010) (upholding pretrial detention order after "approximately two pounds of processed marijuana (845

grams) and various bottles/jars containing suspected marijuana tinctures and oils were seized from Defendant's residence.").  Moreover, the Supreme Court has expressly determined that "medical necessity is not a defense to manufacturing and distributing marijuana." Id. at 494.  Accordingly, the manufacture and distribution of marijuana remains illegal under federal law even where its purpose is stated to be purely medical in nature.  Id.

With regard to any conflict between federal law and state law on this issue, federal law unquestionably prevails.  "The Supremacy Clause [of the United States Constitution] "unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." Gonzales v. Raich, 545 U.S. 1, 28 (2005).  "It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be." Id.  "Just as state acquiescence to federal regulation cannot expand the bounds of the Commerce Clause … so too state action cannot circumscribe Congress' plenary commerce power." Id.

Nothing has changed with regard to the law in this area since the Supreme Court's decision in Oakland Cannabis in 2001.  "[T]he DEA recently decided to keep marijuana as a Schedule I drug and declined to re-classify it as Schedule II." Elansari v. United States, Civ. No. 3:15-1461, 2016 U.S. Dist. LEXIS 108922, *10 n.3 (M.D. Pa. Aug. 17, 2016).  Thus, "***marijuana will remain illegal for any purpose under federal law even though 25 states, including Pennsylvania***, and the District of Columbia have legalized it for medical reasons and several states have decriminalized it for personal use." Id. (emphasis added).  See also United States v. Ngoc Phu Dinh, 194 F. Supp. 3d 353, 356-57 (W.D. Pa. 2016) ("Despite the Commonwealth of Pennsylvania's enactment of its medical marijuana law, the distribution of marijuana remains illegal under federal law.").  See also United States v. Felder, Cr. No. 06-079-01, 2007 U.S. Dist. LEXIS 4080 (E.D. Pa., Jan. 17, 2007) (Pratter, J.) (denying motion to dismiss indictment for distribution of and possession with intent to distribute marijuana and other controlled substances)

aff'd 389 Fed. Appx. 111 (3d Cir. Aug. 6, 2010) Post-conviction relief denied at 2013 U.S. Dist. LEXIS 617 (E.D. Pa., Jan. 2, 2013) (Pratter, J.) aff'd 529 Fed. Appx. 111 (3d Cir. June 19, 2013).

"[A]rguments challenging … the enforcement of federal marijuana laws are not unique in that they have been repeatedly raised … and summarily rejected by the courts." Ngoc Phu Dinh, 194 F. Supp. 3d at 357. "Hence, the changes in state law do not provide grounds for relief," and marijuana remains illegal to distribute under federal law, which prevails over state law pursuant to the Supremacy Clause of the United States Constitution. Id.

According to PharmaCann's Complaint, it seeks an order from this Court "declaring that the operation of [a] medical marijuana dispensary in conformity with Pennsylvania law is not 'unlawful'." See Ex. A, Compl., Wherefore Clause. PharmaCann's requested relief is thus plainly barred as a matter of federal law and cannot be granted by this Court. Accordingly, Count I of Plaintiff's Complaint for a declaratory judgment that its planned medical marijuana dispensary on the Property is "not unlawful" must be dismissed as a matter of law.

C.    **PharmaCann's Request To Eliminate The Deed Restriction In The Special Warranty Deed Prohibiting Any Drug Store On The Property Is Moot Because The Proposed Marijuana Dispensary Violates Federal Law And The Deed Restriction Prohibiting Any Activity Or Use Which Is Unlawful.**

PharmaCann requests an Order from this Court eliminating the deed restriction in the Special Warranty Deed prohibiting the operation of any "drug store" on the Property. Ex. A, Compl. at 12-13. As set forth above, however, PharmaCann's proposed medical marijuana dispensary is impermissible because it violates the deed restriction on the Property prohibiting "any activity or use which is unlawful." Ex. A, Compl., Special Warranty Deed, at D 1981 252. Since PharmaCann's proposed marijuana dispensary violates the deed restriction on the Property prohibiting "any activity or use which is unlawful," whether it separately violates the deed restriction prohibiting any "drug store" on the Property is moot. Accordingly, Counts I and II of PharmaCann's Complaint for an order eliminating the "drug store" deed restriction from the

Special Warranty Deed must be dismissed as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6).

"[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." Surrick v. Killion, 449 F.3d 520, 526 (3d Cir. 2006) (citing DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974)). "Article III requires that an actual, live controversy be extant at all stages of review, not merely at the time the complaint is filed." Surrick, 449 F.3d at 526 (citing Steffel v. Thompson, 415 U.S. 452, 459 n.10, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)). "The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." Surrick, 449 F.3d at 526. "A central question in determining mootness is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful relief." Id. (citing Old Bridge Owners Coop. Corp v. Twp. of Old Bridge, 246 F.3d 310, 314 (3d Cir. 2001)).

Here, PharmaCann is expressly prohibited under the Special Warranty Deed from engaging in "any activity or use which is unlawful," and under federal law, operating a medical marijuana dispensary is unlawful. Accordingly, regardless of whether PharmaCann's proposed medical marijuana dispensary also constitutes a prohibited "drug store" under the Special Warranty Deed, it constitutes an "activity or use which is unlawful," thereby rendering the activity impermissible under the Special Warranty Deed. PharmaCann's request for an order eliminating the deed restriction in the Special Warranty Deed prohibiting the operation of any "drug store" on the Property, is therefore moot. Accordingly, Counts I and II of PharmaCann's Complaint seeking an order eliminating the "drug store" deed restriction from the Special Warranty Deed must be dismissed as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff PharmaCann Penn, LLC's Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Dated:  October 24, 2017

**BLANK ROME LLP**

By: */s/ Lewis W. Schlossberg*
James T. Smith, Esquire
Evan H. Lechtman, Esquire
Lewis W. Schlossberg, Esquire
I.D. Nos. 39933, 89845 & 91773
One Logan Square
Philadelphia, PA  19103
(215) 569-5500
*Attorneys for Defendants Franklin Mills Residual Limited Partnership f/k/a Liberty Mills Residual Limited Partnership, Simon Property Group, Inc., and Franklin Mills Associates Limited Partnership f/k/a Liberty Mills Associates Limited Partnership*

## <u>CERTIFICATE OF SERVICE</u>

I, Lewis W. Schlossberg, Esquire, hereby certify that, on October 24, 2017, a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Complaint, together with Memorandum of Law and exhibits thereto, was served via first class mail and the court's CM/ECF system upon the following, and said filing is available for viewing by all parties of record:

Robert S. Tintner, Esquire
Joshua Horn, Esquire
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
*Counsel for Plaintiff*

Jonathan D. Klein, Esquire
Clark Hill PLC
2005 Market Street, Suite 1000
Philadelphia, PA 19103
*Counsel for BV Development Superstition RR, LLC*

Western Franklin Mills Corporation
2001 Market Street, 5th Floor
Two Commerce Square
Philadelphia, PA 19103

*/s/ Lewis W. Schlossberg*
LEWIS W. SCHLOSSBERG

# EXHIBIT A

# Court of Common Pleas of Philadelphia County
## Trial Division
# Civil Cover Sheet

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| PHARMACANN PENN, LLC | BV DEVELOPMENT SUPERSTITION RR, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1010 LAKE STREET SECOND FLOOR OAK PARK IL 60301 | 3131 EAST CAMELBACK ROAD PHOENIX AZ 85016 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | FRANKLIN MILLS RESIDUAL LIMITED PARTNERSHIP, ALIAS: F/K/A LIBERTY MILLS RESIDUAL PARTNERSHIP |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | C/O CT CORPORATION SYSTEM 2001 MARKET STREET, 5TH FLOOR TWO COMMERCE SQUARE PHILADELPHIA PA 19103 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SIMON PROPERTY GROUP, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | C/O CT CORPORATION SYSTEM 2001 MARKET STREET, 5TH FLOOR TWO COMMERCE SQUARE PHILADELPHIA PA 19103 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 5 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal ☐ Writ of Summons ☒ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☒ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☐ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☒ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | |

**CASE TYPE AND CODE**

30 - REAL PROPERTY - OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | FILED PRO PROTHY SEP 20 2017 M. BRYANT | YES    NO |

---

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: __PHARMACANN PENN, LLC__

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ROBERT S. TINTNER | 2000 MARKET ST. 20TH FL PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)299-2766 | (215)299-2150 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 73865 | rtintner@foxrothschild.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| ROBERT TINTNER | Wednesday, September 20, 2017, 03:31 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. BV DEVELOPMENT SUPERSTITION RR, LLC
   3131 EAST CAMELBACK ROAD
   PHOENIX AZ 85016
2. FRANKLIN MILLS RESIDUAL LIMITED PARTNERSHIP
   ALIAS: F/K/A LIBERTY MILLS RESIDUAL PARTNERSHIP
   C/O CT CORPORATION SYSTEM 2001 MARKET STREET, 5TH FLOOR TWO COMMERCE SQUARE
   PHILADELPHIA PA 19103
3. SIMON PROPERTY GROUP, INC.
   C/O CT CORPORATION SYSTEM 2001 MARKET STREET, 5TH FLOOR TWO COMMERCE SQUARE
   PHILADELPHIA PA 19103
4. FRANKLIN MILLS ASSOCIATES LIMITED PARTNERSHIP
   ALIAS: F/K/A LIBERTY MILLS LIMITED PARTNERSHIP
   C/O CT CORPORATION SYSTEM 2001 MARKET STREET, 5TH FLOOR TWO COMMERCE SQUARE
   PHILADELPHIA PA 19103
5. WESTERN FRANKLIN MILLS CORPORATION
   C/O CT CORPORATION SYSTEM 2001 MARKET STREET, 5TH FLOOR TWO COMMERCE SQUARE
   PHILADELPHIA PA 19103

*J*

# COMMERCE PROGRAM ADDENDUM
# TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

_____ 1.    Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

__X__ 2.    Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

_____          a.    Uniform Commercial Code transactions;

_____          b.    Purchases or sales of business or the assets of businesses;

_____          c.    Sales of goods or services by or to business enterprises;

_____          d.    Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

_____          e.    Surety bonds;

__X__          f.    Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

_____          g.    Franchisor/franchisee relationships.

_____ 3.    Actions relating to trade secret or non-compete agreements;

_____ 4.    "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

_____ 5.    Actions relating to intellectual property disputes;

_____ 6.    Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

_____ 7.    Derivative actions and class actions based on claims otherwise falling within these ten types, such as shareholder class actions, but not including consumer class actions, personal injury class actions, and products liability class actions;

_____ 8.    Actions relating to corporate trust affairs;

_____ 9.    Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

_____ 10.   Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

**FOX ROTHSCHILD LLP**
BY: ROBERT S. TINTNER, JOSHUA HORN, ESQUIRES
IDENTIFICATION NOS. 73865, 71799
2000 MARKET STREET, TWENTIETH FLOOR
PHILADELPHIA, PA 19103-3291
(215) 299-2000



Filed and Attested by the
Office of Judicial Records
20 SEP 2017 03:31 pm
ATTORNEY: C. BRYANT
PHARMACANN PENN, LLC

---

PHARMACANN PENN, LLC,
a Pennsylvania Limited Liability Company,
1010 Lake Street, Second Floor
Oak Park, IL 60301,

                         Plaintiff,

         v.

RV DEVELOPMENT SUPERSTITION RR, LLC,
a New Mexico Limited Liability Company,
3131 East Camelback Road #220
Phoenix, AZ 85016,

FRANKLIN MILLS RESIDUAL LIMITED
PARTNERSHIP f/k/a LIBERTY MILLS
RESIDUAL PARTNERSHIP,
a Pennsylvania Limited Partnership,
c/o CT Corporation System
2001 Market Street, 5th Floor
Two Commerce Square
Philadelphia, PA 19103,

SIMON PROPERTY GROUP, INC.,
a Delaware Corporation,
c/o CT Corporation System
2001 Market Street, 5th Floor
Two Commerce Square
Philadelphia, PA 19103,

FRANKLIN MILLS ASSOCIATES LIMITED
PARTNERSHIP f/k/a LIBERTY MILLS LIMITED
PARTNERSHIP,
a District of Columbia Limited Partnership,
c/o CT Corporation System
2001 Market Street, 5th Floor
Two Commerce Square
Philadelphia, PA 19103,

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

COMMERCE PROGRAM

SEPTEMBER TERM, 2017

NO. _____

Case ID: 170902409

WESTERN FRANKLIN MILLS CORPORATION, :
a Pennsylvania Corporation, general partner of :
Franklin Mills Associates Limited Partnership, :
c/o CT Corporation System :
2001 Market Street, 5th Floor :
Two Commerce Square :
Philadelphia, PA 19103, :
:
Defendants. :

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
ONE READING CENTER
PHILADELPHIA, PA 19107
TELEPHONE: (215) 238-1701

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estar demandas expuestas las páginas siguientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificatión. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su personá. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificatión. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las prövisiones de esta demanda. Usted puese perder dinero o sus propiedades u ostros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEPHONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telephono: (215) 238-1701

2

Case ID: 170902409

**FOX ROTHSCHILD LLP**
BY: ROBERT S. TINTNER, JOSHUA HORN, ESQUIRES
IDENTIFICATION NOS. 73865, 71799
2000 MARKET STREET, TWENTIETH FLOOR
PHILADELPHIA, PA 19103-3291
(215) 299-2000

ATTORNEYS FOR PLAINTIFF
PHARMACANN PENN, LLC

---

PHARMACANN PENN, LLC,

    Plaintiff,

v.

BV DEVELOPMENT SUPERSTITION RR, LLC, et al.,

    Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
COMMERCE PROGRAM

SEPTEMBER TERM, 2017
NO. :_____

---

## COMPLAINT FOR DECLARATORY AND QUIET TITLE RELIEF

Plaintiff, PharmaCann Penn, LLC, a Pennsylvania limited liability company ("PharmaCann"), through its undersigned counsel, Fox Rothschild LLP, by way of Complaint for Declaratory and Quiet Title Relief against defendants, BV Development Superstition RR, LLC, a New Mexico limited liability company ("BV"), Franklin Mills Residual Limited Partnership f/k/a Liberty Mills Residual Limited Partnership, a Pennsylvania limited partnership ("Franklin Mills"), Simon Property Group, Inc., a Delaware corporation ("Simon"), Franklin Mills Associates Limited Partnership f/k/a Liberty Mills Associates Limited Partnership, a District of Columbia limited partnership ("Franklin Mills Associates"), and Western Franklin Mills Corporation, general partner of Franklin Mills Associates Limited Partnership, a Pennsylvania corporation ("Western"), avers the following:

### The Parties

1. PharmaCann is a Pennsylvania limited liability company with its principal place of business located at 1010 Lake Street, Second Floor, Oak Park, Illinois 60301. PharmaCann applied for and received a medical marijuana dispensary permit in Pennsylvania on June 29, 2017.

2. BV is a New Mexico limited liability company with its principal place of business located at 3131 East Camelback Road #220, Phoenix, Arizona 85016.

3. Franklin Mills is a Pennsylvania limited liability company with a registered address c/o CT Corporation System, 2001 Market Street, 5th Floor, Two Commerce Square, Philadelphia, Pennsylvania 19103.

4. Simon is a Delaware corporation with a registered address c/o CT Corporation System, 2001 Market Street, 5th Floor, Two Commerce Square, Philadelphia, Pennsylvania 19103. Simon owns and/or manages the Philadelphia Mills shopping complex.

5. Franklin Mills Associates is a District of Columbia limited liability company with a registered address c/o CT Corporation System, 2001 Market Street, 5th Floor, Two Commerce Square, Philadelphia, Pennsylvania 19103. Franklin Mills Associates is the general partner of Franklin Mills.

6. Western is a Pennsylvania corporation with a registered address c/o CT Corporation System, 2001 Market Street, 5th Floor, Two Commerce Square, Philadelphia, Pennsylvania 19103. Western is the general partner of Franklin Mills Associates.

### Jurisdiction and Venue

7. Jurisdiction and venue are proper in the Court of Common Pleas of Philadelphia County as this matter relates to real property located in Philadelphia, Pennsylvania.

8. Further, PharmaCann and Franklin Mills are Pennsylvania limited liability companies.

9. Western is a Pennsylvania corporation.

10. All of the defendants regularly conduct business in the Commonwealth of Pennsylvania ("Commonwealth" or "Pennsylvania").

-4-

## Factual Background

### A. History of the Property at Issue

11. The real property at issue in this matter, 599 Franklin Mills Circle, Philadelphia, Pennsylvania 19154 (the "Property"), is part of the Franklin Mills shopping complex, which now is known as Philadelphia Mills ("Philadelphia Mills").

12. Simon owns Philadelphia Mills, and Simon owns and/or manages other real property that is part of the Philadelphia Mills shopping complex.

13. As part of the development of Philadelphia Mills in 1991, Franklin Mills conveyed the Property by purchase to Chi-Chi's USA, Inc. ("Chi-Chi's"). See Special Warranty Deed attached hereto as Exhibit "A".

14. During the time of the sale to Chi-Chi's, the Property was subject to certain Deed Restrictions and other covenants contained in the Special Warranty Deed – all largely because the Property was part of and subject to the overall development of Philadelphia Mills. Id.

15. In 2005, Chi-Chi's conveyed its interest in the Property to BV by Quitclaim Deed dated September 8, 2005 and recorded on October 11, 2005. See Deed into BV attached hereto as Exhibit "B".

16. On March 17, 2017, twenty-six (26) years after the creation of the Special Warranty Deed, BV entered into a Purchase and Sale Agreement with PharmCann to acquire the Property.

17. PharmaCann, as part of its formal application to the Commonwealth of Pennsylvania's Department of Health for a medical marijuana dispensary permit, identified the Property as its principal dispensary location, and the Commonwealth issued PharmaCann a permit based upon that location. Moreover, the City of Philadelphia approved PharmaCann's

-5-

request for a zoning permit to operate a medical marijuana dispensary at the Property. See Approved Zoning Permit Statements attached hereto as Exhibit "C".

18. As obligated, BV properly provided Franklin Mills with a Right of First Refusal to repurchase the Property before selling the Property to PharmaCann. On March 29, 2017, consistent with the restrictions contained in the Special Warranty Deed, Franklin Mills waived its right to repurchase the Property by electing not to exercise its Right of First Refusal to repurchase the Property. See March 29, 2017 letter attached hereto as Exhibit "D".

19. In its March 29, 2017 letter, and again in a letter dated August 23, 2017, however, Franklin Mills advised BV that it believed that the sale of the Property for a medical marijuana dispensary was "strictly prohibited" by the "Prohibited Uses" in the Deed Restrictions contained in the Special Warranty Deed and threatened to take action to enforce the Deed Restriction if the sale of the Property closed. Id.; see also August 23, 2017 letter attached hereto as Exhibit "E".

20. The Deed Restrictions contained in the Special Warranty Deed do not prohibit, in any way, a medical marijuana dispensary because medical marijuana dispensaries – subject to statutory restrictions and regulations imposed by statute – are (a) neither "unlawful" in Pennsylvania, (b) nor "drug stores," under existing Pennsylvania law.

**B.** **Pennsylvania enacts Medical Marijuana Legislation with Strict Regulations.**

21. The Medical Marijuana Act, 35 P.S.§10231.101 *et seq*. (the "Act") was signed into law on April 17, 2016 by Governor Wolf after deliberation and passage by both houses of the Pennsylvania Legislature.

22. The Act in Pennsylvania expressly authorizes the use of medical marijuana in Pennsylvania for seventeen (17) discrete and defined serious medical conditions (such as cancer, HIV/AIDS and ALS).

-6-

23. In the Commonwealth, the proposed uses and application of medical marijuana are extremely limited.

24. The regulations promulgated under the Act have stringent requirements for potential growers/processers and dispensaries. See 28 Pa. Code §1141 *et seq.*

25. For example, the Act authorizes up to only fifty (50) medical marijuana dispensaries to be divided among six (6) defined geographic regions throughout the Commonwealth.

26. Applications for licenses were due by March 20, 2017, and the Pennsylvania Department of Health awarded dispensary licenses on June 29, 2017.

27. Pursuant to the Act and the applicable regulations, dispensaries must be operational within six (6) months of the Commonwealth issuing the requisite licenses. See 28 Pa. Code §1141.42.

**C.    PharmaCann Applies for a License to be a Medical Marijuana Dispensary.**

28. PharmaCann submitted its formal application to become a medical marijuana dispensary to the Commonwealth on March 20, 2017.

29. As part of its application, PharmaCann identified the Property as the location for its primary dispensary.

30. On June 29, 2017, the Commonwealth issued PharmaCann a dispensary permit.

31. As a result of the permit issued by the Commonwealth, PharmaCann's dispensary must be operational by no later than December 29, 2017.

32. Similarly, the Philadelphia Zoning Code has zoned the Property for a medical marijuana facility.

-7-

33. On July 28, 2017, PharmaCann received a Zoning/Use Registration Permit to use the Property as a medical marijuana dispensary. See Zoning/Use Registration Permit (Exhibit "C").

34. PharmaCann is ready, willing and able to close on the Property with BV and to comply with the Act and all Commonwealth regulations for its medical marijuana dispensary.

**D. Franklin Mills Impedes PharmaCann's Ability to Open its Proposed Location.**

35. Franklin Mills has unnecessarily impeded PharmaCann's ability to close on the Property and to develop its medical marijuana dispensary consistent with the relevant provisions of the Act and the accompanying regulations.

36. There is no basis for Franklin Mills to object and/or to impede the closing on the sale of the Property.

37. First, contrary to what Franklin Mills has asserted, operation of PharmaCann's proposed medical marijuana dispensary pursuant to the Act is not "unlawful".

38. On the contrary, the Commonwealth granted PharmaCann a licensed permit because PharmaCann has complied fully with the Act and all accompanying regulations and because PharmaCann has the resources and ability to operate a medical marijuana dispensary in conformity with Pennsylvania law.

39. Further, medical marijuana dispensaries – subject entirely to the Act and the accompanying regulations – are expressly lawful in Pennsylvania, and Pennsylvania law governs exclusively the operations, permitting and licensure of medical marijuana dispensaries.

40. Second, medical marijuana dispensaries are not "drug stores" as Franklin Mills suggests.

-8-

41.    Medical marijuana dispensaries are not open to the public (only patients with Commonwealth-issued medical marijuana identification cards have access), and they do not sell prescription drugs and devices, health and beauty aids or other related items.

42.    Medical marijuana is a drug but not in the ordinary and customary meaning intended in the name "drug store" because it is neither a prescription drug nor an "over the counter" pharmaceutical or nutraceutical.

43.    Indeed, medical marijuana dispensaries dispense only limited forms of smokeless medical marijuana *(i.e.*, vape, oils, tinctures and creams) to appropriately certified individuals suffering from at least one of seventeen (17) defined serious medical conditions, who have received a written recommendation from a properly certified physician, and all of which are subject to stringent regulations and continuous oversight by the Commonwealth's Department of Health.

44.    Because of Franklin Mills' untenable and insupportable position on these purported "Prohibited Uses" in the Deed Restrictions, PharmaCann must seek appropriate declaratory and quiet title relief so that PharmCann can properly open its dispensary and provide aid and comfort to the seriously ill patients that the Commonwealth intended to care for by the passage of the Act.

45.    Because of the timing of the six (6) month requirement to become operational, PharmaCann must seek declaratory and quiet title relief on an expedited basis.

46.    PharmaCann is entitled to a declaration by this Court that its operation of a medical marijuana dispensary is mandated and regulated by Pennsylvania law and is not "unlawful" for purposes of an outdated deed restriction.

-9-

47.     PharmaCann is also entitled to a declaration by this Court that its operation of a medical marijuana dispensary, without any evidence of regulatory non-compliance, is consistent with the Act and the accompanying regulations and, thus, is lawful and permissible.

48.     PharmaCann is further entitled to a declaration by this Court that its operation of a medical marijuana dispensary is not a "drug store" as defined in the Deed Restrictions because "drug stores" are entirely separate entities.

49.     Alternatively, PharmaCann is entitled to quiet title relief invalidating and striking the Deed Restriction prohibiting a "drug store" because that restriction is outdated, unnecessary and no longer a substantial benefit to anyone associated with Philadelphia Mills, let alone the prior owner/tenant, Phar-Mor, a licensed pharmacy and drug store, for whom this restriction was created and that is now no longer in business.

50.     There are no other parties, who have an interest in this declaratory and/or quiet title Complaint, other than the parties to this action.

<div align="center">

### COUNT I
### ACTION FOR DECLARATORY JUDGMENT

</div>

51.     PharmaCann hereby incorporates by referenced paragraphs 1 through 50, inclusive of its Complaint as if the same were set forth in full herein.

52.     PharmaCann is entitled to a declaratory judgment and related relief consistent with 42 Pa.C.S.A. §7531 *et seq.* (2017).

53.     Pursuant to 42 Pa.C.S.A. §7533, "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." Id.

<div align="center">-10-</div>

54.     PharmCann has a legitimate need for declaratory relief, as there is a genuine justiciable controversy.

55.     Franklin Mills opposes BV's proposed sale of the Property to PharmaCann based upon the "Prohibited Uses" in the Deed Restrictions contained in the Special Warranty Deed.

56.     The Pennsylvania Rules of Civil Procedure permit complaints for declaratory judgment, such as PharmaCann's Complaint in this matter, under these circumstances.

57.     Pursuant to Pa. R. Civ. P. 1601(a), PharmaCann respectfully requests for this Court to determine as a matter of law that the operation of medical marijuana dispensary is not "unlawful" as defined in the "Prohibited Uses" of the Deed Restrictions contained in the Special Warranty Deed.

58.     Pursuant to Pa. R. Civ. P. 1601(a), PharmaCann respectfully requests for this Court to determine as a matter of law that the operation of medical marijuana dispensary is lawful assuming that PharmaCann complies fully with the Act and all related regulations, as well as Philadelphia's zoning requirements.

59.     Pursuant to Pa. R. Civ. P. 1601(a), PharmaCann respectfully requests for this Court to determine as a matter of law that the operation of medical marijuana dispensary is not considered to be a "drug store" as defined in the "Prohibited Uses" of the Deed Restrictions contained in the Special Warranty Deed.

60.     PharmaCann seeks such declaratory relief on an expedited basis.

WHEREFORE, plaintiff, PharmaCann Penn, LLC, respectfully requests that this Court enter judgment in its favor and against defendants, BV Development Superstition RR, LLC, Franklin Mills Residual Limited Partnership, Simon Property Group, Inc., Franklin Mills Associates Limited Partnership and Western Franklin Mills Corporation, and enter an Order:

-11-

(a.) declaring that the operation of medical marijuana dispensary in conformity with Pennsylvania law is not "unlawful" as defined in the "Prohibited Uses" of the Deed Restrictions contained in the Special Warranty Deed;

(b.) declaring that the operation of medical marijuana dispensary is lawful assuming that PharmaCann complies fully with the Act and all related regulations;

(c.) declaring that that the operation of medical marijuana dispensary is not considered to be a "drug store" as defined in the "Prohibited Uses" of the Deed Restrictions contained in the Special Warranty Deed; and

(d.) granting such other relief as the Court deems appropriate.

## COUNT II
## ACTION FOR QUIET TITLE RELIEF

61. PharmaCann hereby incorporates by referenced paragraphs 1 through 60, inclusive of its Complaint as if the same were set forth in full herein.

62. Alternatively, PharmaCann is entitled to quiet title relief consistent with Pennsylvania Rule of Civil Procedure 1066 *et seq.*

63. The "drug store" Deed Restriction is outdated, unnecessary and no longer a substantial benefit to anyone associated with Philadelphia Mills, let alone the prior owner/tenant, Phar-Mor, for whom this restriction was created and which is now no longer in business.

64. Pursuant to Pennsylvania Rule of Civil Procedure 1066(b)(2), PharmaCann respectfully requests that this Court invalidate the limitation on a "drug store" as a "Prohibited Use" as contained in the Deed Restrictions in the Special Warranty Deed.

65. Pursuant to Pennsylvania Rule of Civil Procedure 1066(b)(2), PharmaCann respectfully requests that this Court strike the limitation on a "drug store" as a "Prohibited Use" as contained in the Deed Restrictions in the Special Warranty Deed.

Case ID: 170902409

WHEREFORE, plaintiff, PharmaCann Penn, LLC, respectfully requests that this Court enter judgment in its favor and against defendants, BV Development Superstition RR, LLC, Franklin Mills Residual Limited Partnership, Simon Property Group, Inc., Franklin Mills Associates Limited Partnership and Western Franklin Mills Corporation, and enter an Order:

        (a.)    invalidating as a "Prohibited Use" the "drug store" Deed Restriction contained in the Special Warranty Deed;

        (b.)    striking the "drug store" limitation as a "Prohibited Use" as contained in the Deed Restrictions in the Special Warranty Deed;

        (c.)    permitting PharmaCann to record with the Philadelphia Department of Records a copy of any Order quieting title in its favor; and

        (d.)    granting such other relief as the Court deems appropriate.

ROBERT S. TINTNER, ESQUIRE
JOSHUA HORN, ESQUIRE
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
Tel: (215) 299-2766
Fax: (215) 299-2150

**Attorneys for Plaintiff,
PHARMACANN PENN, LLC**

Dated: September 20, 2017

-13-

| | | |
|---|---|---|
| PHARMACANN PENN, LLC, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | COMMERCE PROGRAM |
| Plaintiff, | : | |
| v. | : | SEPTEMBER TERM, 2017 |
| | : | NO. _____ |
| BV DEVELOPMENT SUPERSTITION RR, LLC, | : | |
| et al., | : | |
| Defendants. | : | |

## VERIFICATION

I, Jeremy Unruh, hereby verify and state that I am the General Counsel for PharmaCann LLC, that I am an authorized agent of the plaintiff, PharmaCann Penn, LLC, in this action and that I am authorized to make this Verification on its behalf. I also state that the facts set forth in the foregoing Complaint for Declaratory and Quiet Title Relief are true and correct to the best of my knowledge, information and belief. I understand that the statements made therein are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

JEREMY UNRUH, for and on behalf of
PHARMACANN PENN, LLC

Date: September 20, 2017

Case ID: 170902409

*EXHIBIT "A"*

Case ID: 170902409

D 1981 235

C 99P007 h 20,664

## SPECIAL WARRANTY DEED

FRANKLIN MILLS RESIDUAL LIMITED PARTNERSHIP, f/k/a Liberty Mills Residual Limited Partnership, a District of Columbia limited partnership ("Grantor"), for and in consideration of Five Hundred Sixty Thousand Dollars ($560,000.00) and other good and valuable consideration received, conveys to CHI-CHI'S U.S.A., INC., a Kentucky corporation ("Grantee"), whose address is Plainview Triad East, 10200 Linn Station Road, P. O. Box 32338, Louisville, Kentucky 40232-2338, Attn: Director of Real Estate, the real estate described in Exhibit A attached hereto and incorporated herein by reference, situated in the City of Philadelphia and Commonwealth of Pennsylvania (the "Property");

TO HAVE AND TO HOLD, with all appurtenances thereto, unto Grantee, forever;

And Grantor, for itself and its successors, covenants that it will warrant and defend the Property only against acts of Grantor subject to: (1) the Permitted Encumbrances set forth in Exhibit B attached hereto and incorporated herein by reference, and (2) the Deed Restrictions set forth in Exhibit C attached hereto and incorporated herein by reference.

IN WITNESS WHEREOF, Grantor has caused its name to be signed hereto by its general partners this _15th_ day of October 1991.

[Signature page attached]

D 1981 236

FRANKLIN MILLS RESIDUAL LIMITED
PARTNERSHIP, f/k/a Liberty Mills
Residual Limited Partnership, a
District of Columbia limited
partnership

By: Franklin Mills Associates Limited
Partnership, f/k/a Liberty Mills
Limited Partnership, a District of
Columbia limited partnership,
general partner

By: Western Franklin Mills Corp.,
a Pennsylvania corporation,
general partner of Franklin
Mills Associates Limited
Partnership

ATTEST:

By: _____

Name:  Victoria A. Stoll

Title:  Assistant Secretary

By: _____

Name:  Herbert S. Miller

Title:  President

[This is a signature page to that certain Special Warranty Deed
dated October  18th, 1991]

-2-

Case ID: 170902409

D 1981 237

DISTRICT OF COLUMBIA          SS.

On this 18th day of October, 1991, before me personally appeared Herbert S. Miller, to me personally known, who being by me duly sworn, did say that he is the President of Western Franklin Mills Corp., a Pennsylvania corporation, a corporate general partner of Franklin Mills Associates Limited Partnership, a District of Columbia limited partnership, a general partner of FRANKLIN MILLS RESIDUAL LIMITED PARTNERSHIP, the entity named in and which executed the within instrument; and said Herbert S. Miller acknowledged before me the said instrument to be the free act and deed of said limited partnership.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal.

_Betsy Benito_
Notary Public

My Commission expires: 6-14-96

Case ID: 170902409

D 1981 238

ATTESTED TO:

ACCEPTED AND AGREED TO:

CHI-CHI'S U.S.A., INC., a Kentucky
corporation

By: _Michael Gurell_

Name: _BCV_

Title: _Michael G. Gurell_

By: _____

Name: _Ronald Padgett_

Title: _Pre_

STATE OF _Kentucky_ )
) SS
COUNTY OF _Jefferson_ )

On this _14th_ day of _November_ , 1991, before me
personally appeared _Ronald Padgett_ , to me personally
known, who being by me duly sworn, did say that _he_ in the _President_
of _Chi-Chi's USA Inc_ , a _Kentucky_ corporation, the
entity named in and which executed the within instrument; and said _____
_President_ acknowledged before me the said instrument to be the
free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal.

_Donna Howard_
Notary Public

Notary Public, State at Large, KY.
My commission expires Mar. 31, 1993

My Commission Expires: _____

Case ID: 170902409



D1791- 239

Case ID: 170902409

Exhibit "A"

parcel-g/p2
JOBE 8659.001.04

DESCRIPTION OF
PARCEL G-14
CITY OF PHILADELPHIA, COUNTY OF PHILADELPHIA
COMMONWEALTH OF PENNSYLVANIA

PHILADELPHIA DISTRICT STANDARD

ALL THAT CERTAIN tract or parcel of land and premises situated in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania and being more particularly described as follows:

BEGINNING at a point the following course and distance from a point being the intersection of the extended centerlymost street line of Woodhaven Road (State Hwy. 0063) as widened (variable width) and the southerlymost street line of Knights Road (State Hwy. 1015) (100' wide):

a) N 63°37'24" E, a distance of 2019.81 feet to the aforementioned point of BEGINNING;

THENCE (1) On a curve to the left having a radius of 577.00 feet, an arc length of 228.36 feet and a chord which bears N 07°13'57" W, to a point of reverse curvature;

THENCE (2) On a curve to the right having a radius of 28.93 feet, an arc length of 44.70 feet to a point of compound curvature;

THENCE (3) On a curve to the right having a radius of 407.48 feet, an arc length of 167.55 feet to a point;

THENCE (4) S 86°28'17" E, a distance of 45.59 feet to a point of curvature;

THENCE (5) On a curve to the right having a radius of 28.93 feet, an arc length of 43.61 feet to a point of compound curvature;

THENCE (6) On a curve to the right having a radius of 1539.07 feet, an arc length of 201.30 feet to a point;

THENCE (7) N 82°36'39" W, a distance of 202.76 feet to the FIRST MENTIONED POINT OF BEGINNING.

CONTAINING 66,906 Square Feet More or Less
(Philadelphia District Standard)

CONTAINING 67,249 Square Feet More or Less
(U.S. Standard)

## PERMITTED ENCUMBRANCES

1.     Master Declaration and Agreement of Easements, Covenants, Conditions and Restrictions dated June 28, 1988, and recorded on June 30, 1988, in Deed Book FHS 1111, Page 508 (the "Master Declaration").

2.     First Amendment to Master Declaration and Agreement of Easements, Covenants, Conditions and Restrictions between Franklin Mills Associates Limited Partnership and Franklin Mills Residual Limited Partnership dated February 5, 1990, and recorded on March 12, 1990 in Deed Book FHS 1576, Page 347.

3.     Declaration of Covenants and Restrictions by and between Liberty Mills Limited Partnership and Liberty Mills Residual Limited Partnership dated January 20, 1987 and recorded in Deed Book FHS 691, Page 416, as amended by Amendment to Declaration of Covenants and Restrictions recorded in Deed Book FHS 876, Page 357.

4.     Amendment to Declaration of Covenants and Restrictions between Liberty Mills Limited Partnership and Liberty Mills Residual Limited Partnership dated May 23, 1988 and recorded in Deed Book FHS 1133, Page 214.

5.     Second Amendment to Declaration of Covenants and Restrictions between Franklin Mills Associates Limited Partnership and Franklin Mills Residual Limited Partnership dated August 8, 1989 and recorded in Deed Book FHS 1448, Page 396.

6.     Third Amendment to Declaration of Covenants and Restrictions between Franklin Mills Associates Limited Partnership and Franklin Mills Residual Limited Partnership recorded in Deed Book FHS 1704, Page 1.

7.     Declaration of Restrictions between Liberty Mills Limited Partnership and PMI Associates dated August 15, 1988 and recorded in Deed Book FHS 1155, Page 206.

8.     Declaration of Restrictions between Liberty Mills Residual Limited Partnership and Knights Realty Corporation dated June 29, 1988 and recorded in Deed Book FHS 1111, Page 596.

9.     Construction, Operation and Reciprocal Easement Agreement between Liberty Mills Residual Limited Partnership and Philadelphia Home and Design Centre Joint Venture dated June 22, 1987 and recorded in Deed Book FHS 817, Page 291.

EXHIBIT B

Case ID: 170902409

10. (Intentionally omitted).

11. Rights granted to Philadelphia Electric Company in Deed Book CAD 18, Page 335.

12. (Intentionally omitted).

13. Easement Agreement by and among Franklin Mills Associates Limited Partnership, Franklin Mills Residual Limited Partnership, Marriott Family Restaurants and Philadelphia Electric Company dated March 16, 1989 and recorded in Deed Book FHS 1351, Page 293.

14. Easement of Right-of-Way for water main purposes recorded in Deed Book CAB 2099, Page 411 and relocated by Agreement between Franklin Mills Associates Limited Partnership and the City of Philadelphia recorded December 12, 1989 in Deed Book FHS 1151, Page 594.

15. Those matters set forth in the Deed Restrictions attached as Exhibit C to the Special Warranty Deed (the "Deed Restrictions).

16. All existing utility and drainage easements and rights-of-way including, but not limited to, easements granted to Philadelphia Electric, Bell Telephone Company, and Philadelphia Gas Works.

17. Any private, public and/or utility easements and roads and highways.

18. All liens for real property taxes and assessments and water and sewer rents not yet due and payable.

19. Applicable building, zoning and other laws, orders, ordinances and regulations including, without limitation, the Development Agreement described in Paragraph 11 of the Deed Restrictions.

20. Any and all easements, restrictions, covenants, rights, agreements, and conditions of record, and/or shown on any recorded plat for the Property.

-2-

## DEED RESTRICTIONS

Grantor covenants; agrees and acknowledges, by its acceptance and recordation of the Special Warranty Deed to which these Deed Restrictions are attached (the "Deed"), that it hereby takes title to the Property (as defined in the Deed) subject to the following provisions (collectively, the "Deed Restrictions"), which provisions shall be binding upon Grantor and its successors and assigns, including, without limitation, any successive owners, tenants and other occupants of the Property:

1. Grantee (i) agrees and acknowledges that the conveyance of the Property is subject to and benefitted by the Master Declaration (as defined in the preceding Exhibit B), (ii) acknowledges that under the Master Declaration Grantor has reserved certain rights for itself and its successors and assigns and has granted certain rights to other property owners within the Development (as defined below) and accepts the same, (iii) confirms the enforceability of the easements, covenants, conditions and restrictions set forth in the Master Declaration against Grantee, (iv) covenants to comply with all of the terms and conditions contained in the Master Declaration, and (v) covenants not to encumber the Property with, or sell or otherwise convey the Property subject to, any restrictions (other than the Deed Restrictions) concerning the future development or use of the Property or any portion thereof, or further subdivide the Property, without the prior written consent of Grantor, which may be withheld or denied in Grantor's sole discretion.

2. Grantor and Grantee acknowledge and agree that the Property is part of a much larger project that encompasses certain neighboring and adjacent properties (the "Development", which includes all of the property covered by the Master Declaration), which is being developed in large part by Grantor and certain related entities of Grantor. After conveyance of the Property to Grantee, Grantor and its related entities (and their respective Successors, as defined in Paragraph 13 below) will continue to have a substantial interest in the ownership and operation of numerous properties within the Development. Accordingly, Grantor desires to ensure that the Property will be used in a manner consistent with the plans and designs of Grantor and not in a manner that would injure or adversely affect the other properties or operations in the Development. In furtherance of these legitimate objectives Grantee agrees that for a period running from the date hereof until two (2) years after the date Grantee Completes Construction of the Intended Improvements (as defined in Paragraph 6 of these Deed Restrictions), the Property shall be used only for the purpose of constructing and operating a full-service sit-down Mexican restaurant (the "Permitted Use"), and the Property shall not be used for any other purpose or

EXHIBIT C

operated under any trade name other than Chi-Chi's or such other name as Grantee is operating all of its similar restaurants in the Middle Atlantic region, without the prior written consent of Grantor, which may be withheld or denied in Grantor's reasonable discretion. Furthermore, in the event Grantee is allowed to change the use of the Property from the Permitted Use at any time and for any reason (a) the Property shall be used only for a single commercial purpose which does not violate applicable zoning codes or the Master Declaration or any exclusive or restrictive use which Grantor may grant for the benefit of another owner or occupant of a portion of the Development, and (b) the Property shall not be used for any of the Prohibited Uses listed in Schedule 1 attached hereto and incorporated herein by reference. Grantee and Grantor acknowledge that Grantee's acceptance of the foregoing restrictions is a material inducement to Grantor to convey the Property to Grantee, by virtue of its need to protect the legitimate expectations more particularly described above.

3. No buildings or structures located on the Property shall exceed one (1) level, nor twenty (20) feet in height above ground level. The maximum floor area of all buildings and structures located upon the Property (as measured from the outside of all exterior walls of each structure) shall not exceed Eight Thousand Six Hundred (8,600) square feet of Gross Floor Area (as defined in the Master Declaration) unless otherwise consented to by Grantor in writing, which consent may be withheld or denied by Grantor in its sole and absolute discretion. All roof top equipment will be screened from view in an architecturally designed structure.

4. In accordance with the Master Declaration, Grantee covenants to pay to Grantor an annual assessment for the purpose of advertising and promoting the businesses to be conducted upon the Property and elsewhere in the Development (the "Promotion Assessment"). The annual Promotion Assessment payable for the first twenty-four (24) months, commencing on the date provided below, shall be Ten Cents ($0.10) per square foot of Gross Floor Area of all improvements located from time to time on the Property (measured as provided in Paragraph 3 above), and after the first 24 months the Promotion Assessment shall be subject to CPI Adjustment (as defined below) on an annual basis each January 1. The Promotion Assessment shall be due in equal monthly installments, upon the first day of each month, commencing with the earlier of either (i) the first day of the sixth month following the date of the Deed, or (ii) the first day of the first month following the date on which Grantee commences business on the Property. The CPI Adjustment ("CPI Adjustment") shall be made as follows: The base figure shall be multiplied by a fraction, the numerator of which shall be the Consumer Price Index ("CPI") published for the month closest, but prior, to the date of adjustment, and the denominator of which shall be the CPI

-2-

as of the date of recordation of the Deed. As used herein, the CPI shall mean the revised CPI for Wage Earners and Clerical Workers for the Metropolitan Washington, D.C. area (all items, 1967=100) promulgated by the Bureau of Labor Statistics of the United States of Department of Labor. The CPI Adjustment shall not, however, exceed a maximum amount of Six Percent (6%) in any one year. The Promotion Assessment shall be treated in the same manner as, and shall be subject to all provisions applicable to (except as to the amount thereof, which shall be determined as set forth above) Maintenance Assessments (to which the Property shall also be subject) as set forth in the Master Declaration.

5. Grantee covenants to maintain the exterior of all buildings located upon the Property from time to time and the grounds thereof in a good, clean, orderly and sanitary condition as required under the Master Declaration including, but not limited to, keeping the landscaping, parking areas and exterior in good repair and in a neat and clean condition, free of accumulation of trash and debris, repairing of pot-holes in parking lot areas, periodic restriping of parking areas, periodic mowing of grass, and removal and replacement of dead shrubbery, as needed. If Grantee fails to commence performance of such maintenance or repair work as may be required hereunder within 10 days after written notice thereof from Grantor, or in any case where Grantee has commenced the work but fails to complete the same within ten (10) days thereafter, Grantor may enter upon the Property and perform such maintenance or repair work as Grantee has failed to perform in accordance herewith or complete the same, as the case may be, whereupon expenses incurred by Grantor in performing such work, together with a 25% overhead and management fee, shall be paid upon demand therefor by Grantor and, if not paid upon demand, shall be a lien upon the Property, which Grantor may enforce and/or foreclose in the manner provided in Paragraph 4 above. Grantor has the absolute right of entry upon the Property to perform such maintenance and shall in no event be held to be a trespasser upon the Property.

6. (a) Grantee will construct (or cause the construction of) its intended improvements (the "Intended Improvements") (including, without limitation, all parking facilities, driveways, landscaping and sidewalks to be located on the Property) subject to the limitations set forth in Paragraph 3 above and in accordance with all applicable codes, statutes, laws, rules, ordinances, orders and regulations (collectively, "Laws") and applicable recorded restrictions and in accordance with plans and specifications therefor prepared by Grantee and approved by Grantor or the ARC (as defined in the Master Declaration), and in accordance with the Master Declaration and development guidelines established thereunder. Grantor will not unreasonably withhold its approval of Grantee's proposed plans and specifications for the Intended Improvements and, subject to the proviso to this sentence, shall approve or disapprove such

-3-

Case ID: 170902409

plans within seven (7) business days after their submission to
Grantor; provided, however, neither Grantor nor the ARC shall be
required to review or approve any plans or specifications which
are not sufficiently detailed and complete to permit a thorough
and reasoned examination thereof.

(b) Grantee shall obtain all necessary permits
and governmental approvals for the construction and operation of
the Intended Improvements and shall "Complete Construction" not
later than the date which is 24 months after the date hereof (the
"Completion Date"). The phrase "Complete Construction" shall
mean, for purposes hereof, the substantial completion of the
Intended Improvements in accordance with the requirements hereof
and the issuance of (a) final unqualified permanent certifi-
cate(s) of occupancy from all appropriate governmental
agency(ies). Grantee covenants not to apply for any governmental
permits or approvals or submit any plans to any governmental
agency related to the construction on or development of the
Property unless and until Grantor or the ARC shall have approved
them in writing in all respects. If Grantee fails to Complete
Construction of the Intended Improvements by the Completion Date,
Grantor shall have the right, at any time after the Completion
Date but prior to the date that Grantee shall Complete Construc-
tion of the Intended Improvements as aforesaid, to repurchase the
Property from Grantee upon written notice (and such notice and
Grantor's right to repurchase the Property shall be enforceable
even if Grantee Completes Construction of its Intended Improve-
ments after receipt of such notice) for a repurchase price (the
"Repurchase Price") equal to:

(1) the Purchase Price paid by Grantee
to Grantor for the Property less any costs or expenses paid or
incurred by Grantor in connection with the original sale of the
Property to Grantee; plus

(2) the actual, verifiable, hard costs
incorporated into the Intended Improvements by Grantee up to the
date of repurchase (i.e., Grantee's original actual construction
costs, including labor and material expenses, but excluding the
costs of overhead and the costs of preparing the plans and
specifications for the Intended Improvements and the costs of
signage, fixtures, furniture, equipment and machinery attached to
and forming a part of any building, and any development, leasing,
and/or financing fees or costs incurred by Grantee), as shown on
Grantee's paid invoices for such initial construction costs (the
"Hard Costs"), depreciated as set forth below. Grantee shall
present copies of all paid invoices related to Hard Costs to
Grantor within 90 days after the date on which Grantee shall
Complete Construction of the Intended Improvements.

If prior to the date Grantee shall Complete Construction, Grantor
fails to give notice that it has elected to repurchase the

-5-

Property pursuant to this subparagraph 6(b), then this repurchase
right shall be void and of no effect.

(c) Grantor's repurchase rights hereunder may be
exercised by Grantor at any time upon the occurrence of any of
the applicable events set forth in these Deed Restrictions by
giving written notice thereof to Grantee in the manner specified
below. If Grantor exercises any right under these Deed Restric-
tions to repurchase the Property, then real estate taxes and
assessments on the Property shall be prorated as of the date that
Grantee reconveys the Property to Grantor and, upon receipt of
the Repurchase Price from Grantor (which shall be paid within 90 . . .
days after the notice of repurchase is given), Grantee shall
convey to Grantor, by special warranty deed, good and marketable
title to the Property and all improvements thereon and appurte-
nances thereto, free and clear of any liens or encumbrances
(other than Permitted Encumbrances) which did not exist at the
time Grantor conveyed the Property to Grantee. Grantee and
Grantor shall each pay one-half of the costs of all documentary
stamps, transfer taxes, recording fees, and other closing costs
associated with the reconveyance of the Property to Grantor
pursuant to the option granted hereunder. The Repurchase Price
will be reduced by the amount of any sums then due from Grantee
(or any related person or entity) to Grantor (or any related
person or entity) as of the date of reconveyance of the Property
from Grantee to Grantor. The repurchase rights granted to
Grantor under these Deed Restrictions will be specifically
enforceable against Grantee and shall be in addition to, and not
in lieu of, any other rights and remedies that are available to
Grantor, at law or in equity, by virtue of the occurrence of any
of the actions or omissions set forth herein.

(d) Grantee acknowledges that Grantor may be
required to notify Grantee of its intent to repurchase the
Property prior to the final determination of the Repurchase
Price, and Grantor shall have the right, at its sole option, to
rescind such notice and cancel such repurchase if Grantor
determines, after the Repurchase Price is finally determined,
that the Repurchase Price is greater than Grantor anticipated.
If Grantor makes such determination, it shall notify Grantee, in
writing, within 30 days following the date on which the
Repurchase Price is finally determined and Grantor is advised of
the same, that Grantor intends not to repurchase the Property, in
which event Grantor's original notice to Grantee of its intent to
repurchase the Property shall be null and void ab initio and
neither party shall be obligated to proceed with the repurchase
transaction contemplated under such rescinded notice. Neither
the failure of Grantor to exercise any right to repurchase the
Property nor Grantor's election to rescind the exercise of such
right will extinguish, nor be deemed to constitute a waiver of,
Grantor's repurchase rights under these Deed Restrictions (which
will be continuing) in connection with any subsequent occurrence

-5-

Case ID: 170902409

or reoccurrence of an event giving rise to such repurchase
rights. Grantee shall, in all respects, build and operate the
Intended Improvements in accordance with these Deed Restrictions
and all applicable Laws and recorded instruments.

7. If at any time within two (2) years after Grantee
Completes Construction of the Intended Improvements, Grantee
discontinues operation of the Permitted Use for a continuous
period in excess of thirty (30) days (which will include Gran-
tee's failure to commence operations pursuant to the Permitted
Use within 30 days of Completion of Construction) other than for
the purpose of remodelling the Intended Improvements or repairing
same following a substantial casualty (and provided Grantee
diligently pursues to completion any such remodelling or repair-
ing), or otherwise violates any Deed Restrictions, Grantor, at
its sole option, shall have the right to repurchase the Property
for the Repurchase Price and in the manner set forth in Paragraph
6 above, provided that the Hard Costs shall be depreciated,
despite the method of depreciation used for tax purposes, based
upon a straight line method of depreciation over a recovery
period equal to the shorter of the useful life of the subject
improvements calculated under generally accepted accounting
principles, or eighteen (18) years. The depreciated value of the
Hard Costs, calculated in accordance with the foregoing, shall be
set forth in a statement, certified to Grantor by an independent
certified public accounting firm, which statement shall be
delivered to Grantor by Grantee within 30 days of the date on
which Grantor gives notice of any exercise of its repurchase
rights hereunder.

8. Grantee acknowledges and agrees that Grantor may,
at any time hereafter, assign and convey some or all of the
rights reserved by or benefits granted to Grantor hereunder, or
under any other document or instrument of record pertaining to
the Property, to any other person or entity. Grantee further
acknowledges and agrees that from and after the date on which it
receives written notice of any such assignment, Grantee shall
deliver all plans, pay all Promotion Assessments, and submit all
other items required or permitted to be submitted to Grantor to
Grantor's assignee instead, and that Grantor's assignee shall be
entitled to exercise all rights and receive all benefits reserved
by or granted to Grantor as if such assignee had been the
original Grantor hereunder and all such rights and benefits had
been reserved by or granted to Grantor's assignee directly.

9. Grantee acknowledges and agrees that, if Grantor
shall fail to perform any covenant, term or condition hereof upon
Grantor's part to be performed and as a consequence of such
default, Grantee shall recover a money judgment against Grantor,
such judgment shall be satisfied only out of the proceeds of sale
received upon execution of such judgment and levied thereon
against the right, title and interest of Grantor in the Develop-

-6-

ment and out of rents or other income from such property
receivable by Grantor, or out of the consideration received by
Grantor from the sale or other disposition of all or any part of
Grantor's right, title and interest in the Property, subject,
nevertheless, to the rights of any mortgagee of Grantor, and
neither Grantor nor any of the partners comprising the limited
partnership which is Grantor shall be liable for any deficiency.
The foregoing limitation of liability shall be noted in any
judgment secured against Grantor and in the judgment index.

10.   Grantor reserves a non-exclusive, perpetual
easement for ingress and egress on, over and across all
sidewalks, roadways and driveways located upon the Property from
time to time, and all entrances and exists thereto, thereon and
therefrom, plus all parking areas on the Property, so as to
permit the free flow of pedestrian and vehicular traffic to, from
and between any adjoining parcels.  The easements reserved
hereunder shall be for the benefit of Grantor and the owners of
any adjoining parcels, and their successors, assigns, heirs,
representatives, agents, licensees, invitees, tenants and
customers.

11.   Grantee covenants and agrees not to do anything
that would be in violation of or a default under any of the
provisions of the Master Declaration or any Law applicable to the
Property or the use and operation of the Intended Improvements.
Grantee shall not do anything that would be in violation of or a
default under any of the provisions of that certain Development
Agreement, dated November 6, 1986, between Western Development
Corporation, a Maryland corporation, and Liberty Park Advisory
Council and the individuals represented thereby, as amended (the
"Development Agreement").  Pursuant to the Development Agreement,
Grantee expressly (i) agrees to maintain all grounds and internal
private roads on the Property, (ii) acknowledges the Declaration
of Covenants and Restrictions previously filed of record with the
Office of the Commissioner of Records of Philadelphia, Pennsyl-
vania, as the same may have been amended, (iii) assumes and
ensures compliance with the obligations of Grantor under the
Development Agreement as they pertain to the Property, and (iv)
acknowledges that the Advisory Council (as defined in the
Development Agreement) is a third party beneficiary of the
agreements of Grantee in this Paragraph, entitled to enforce the
terms of this Paragraph directly against Grantee. This Paragraph
shall serve as the Declaration of Covenants and Restrictions
required of Grantor under the Development Agreement, and shall
survive the expiration or sooner termination of the covenants
contained in these Deed Restrictions.  Grantee acknowledges that
it has received a copy of the Development Agreement.

12.   If, at any time after acquiring the Property,
Grantee desires to sell the Property individually (which, for
purposes of this Paragraph will include any portion thereof or

-7-

interest therein) and not as part of a group of properties. Grantee covenants that it will only sell the Property individually pursuant to an Offer as defined below, and in accordance with the provisions hereof. An Offer for purposes of this Paragraph is defined as a legitimate unconditional offer to purchase the Property from a bona fide unrelated third-party accompanied by a proposed purchase and sale agreement (the "Offer Agreement") identifying the offeror's intended use of the Property, and a cashier's or certified check for at least Five Percent (5%) of the proposed purchase price. If Grantee receives and desires to accept an Offer, Grantee shall promptly notify Grantor thereof and provide Grantor a complete and fully legible copy of the Offer Agreement accompanied by Grantee's statement that it is prepared to sell the Property upon the terms contained in the Offer Agreement (collectively, the "Offer Notice"); and Grantor shall have the right of first refusal to purchase the Property in accordance with this Paragraph. Within 30 days of receipt of the Offer Notice, Grantor shall notify Grantee whether Grantor elects to exercise its right to purchase the Property as set forth above. If Grantor notifies Grantee that it does not wish to exercise its right to purchase the Property or if Grantor fails to respond within that 30 day period, Grantee may proceed to close the proposed sale upon the terms of the Offer Agreement, provided that such sale may only be closed on terms at least as favorable to Grantee as those contained in the Offer Agreement and the sale may only be made to the purchaser identified therein. If such sale is not closed in such manner within 90 days of the date that Grantee delivers the Offer Notice to Grantor, then Grantee shall have no right to sell the Property without first notifying Grantor and following the complete procedure set forth in this Paragraph. If Grantor elects to exercise its right of first refusal pursuant to this Paragraph, Grantor shall so notify Grantee within the 30 day period, whereupon Grantor shall purchase and Grantee shall sell the Property upon the same terms and conditions as are contained in the Offer Agreement, provided that: (1) Grantor shall be obligated to deposit as earnest money thereunder the lesser of $10,000 or the earnest money provided for in the Offer Agreement; (2) the date of closing of such purchase and sale shall be the later of the date of closing set forth in the Offer Agreement or 30 days after the last date on which Grantor is allowed to notify Grantee of its exercise of the right of first refusal hereunder; and (3) if Grantor's election to exercise its right of first refusal under this Paragraph occurs prior to the time Grantee completes Construction, the price Grantor shall pay to Grantee for the Property shall be the lesser of (a) the Repurchase Price, or (b) the price contained in the Offer Agreement. All purchasers and successor owners of the Property shall take title to the Property subject to the terms of this Paragraph which will continue in full force after all sales and other transfers of the Property (even if Grantor has elected not to exercise its right of first refusal in connection with any such sale or transfer).

-9-

Case ID: 170902409

Notwithstanding anything contained in this Paragraph to the
contrary, the terms of this Paragraph shall not apply to (x) a
sale/leaseback financing transaction in which Grantee sells the
Property and leases it back from the acquiring party (and
occupies it) for a term of not less than twenty (20) years or
(y) a sale of the Property as part of a sale by the seller
thereof to one buyer of ten (10) or more like properties.

13.  All of these Deed Restrictions shall be covenants
running with the land which constitutes the Property and binding
and benefitting the heirs, representatives, successors and
assigns of, and persons claiming by, through or under, the
parties hereto (collectively, "Successors"), for a period of 50
years from the date hereof, after which such covenants (except
easements created herein and as may otherwise specifically be set
forth herein) shall terminate and be of no further effect.  All
such Deed Restrictions shall be specifically enforceable against
Grantee and Grantee's Successors as the owner of the Property
from time to time, and shall inure to the benefit of and be
enforceable by Grantor and its Successors as the owners and/or
possessors of adjacent or neighboring properties.

PHXXXXX.DEED
October 17, 1991 12:32pm

-9-

D 1981 252

PROHIBITED USES

1. Any use which emits or results in an obnoxious odor, noise or sound which may constitute a public or private nuisance; provided this provision shall not prohibit an outdoor paging system (audible only on the Property), nor shall it prohibit the reasonable emanation of cooking odors from any restaurants;

2. Any use which is physically damaging to other portions of the Development or which creates dangerous hazards;

3. Any assembly or manufacturing operation which would be permitted only in a heavy manufacturing or industrial zone or any distillation, refining, smelting, industrial, agricultural, drilling or mining operation;

4. Any trailer court, mobile home park, junk yard, stock yard or animal raising operation (other than pet shops and veterinarians), except that this provision shall not prohibit the temporary use of construction trailers during any periods of construction, reconstruction or maintenance;

5. Any dump or disposal, or any operation for the incineration or reduction of garbage or refuse, unless the same is intended solely for the handling or reducing of waste produced within the Property by occupants thereof conducting permitted uses, if handled in a reasonably clean and sanitary manner;

6. Any operation primarily used as a warehouse;

7. Any central laundry, dry cleaning plant, or laundromat provided this restriction shall not apply to any facility providing on-site service oriented to pick-up and delivery by the ultimate consumer, including nominal supporting facilities;

8. Any mortuary;

9. Any establishment selling or exhibiting pornographic material (provided that this restriction shall not restrict the showing of motion pictures which are not inconsistent with the use and operation of the Development as a family-oriented shopping center);

10. Any flea market;

SCHEDULE 1 TO EXHIBIT C

Case ID: 170902409

11. Any activity or use which is unlawful or conflicts with or violates the Development Agreement;

12. Any night club, discotheque or dance hall;

13. Any lot for the sale of new or used motor vehicles;

14. Any motor vehicle repair or service shop, or any car

15. Any pool or billiard hall;

16. Supermarket (i.e., a store used for the sale and display of food, produce, household paper products, kitchen accessories (e.g., aluminum foil, trash bags, etc.), and/or other such similar items);

17. Drug store (i.e., a store used for the sale and display of drugs, pharmaceutical, health and beauty aids, and/or other such similar items);

18. Any toy store which contains more than Eight Thousand Six Hundred (8,600) square feet of Gross Floor Area (as defined in the Master Declaration);

19. Linen store (i.e., a store used for the sale and display of sheets, blankets, towels, curtains, drapes, window treatments, and/or other such similar items);

20. Store used for the sale and display of clothing and/or accessories;

21. Bowling alley, ice skating or roller skating rink miniature golf course, or other similar sports, recreation and/or entertainment facility;

22. Video, pinball and/or amusement arcade, or other similar entertainment facility;

23. Any electronics store (i.e., a store used for the sale and display of audio equipment (e.g., stereos, compact disc players, radios, etc.), video equipment (e.g., televisions, video cassette recorders, video cameras, etc.), computers, computer games, and/or other such similar items), and/or accessories for any of the foregoing) which contains more than Eight Thousand Six Hundred (8,600) square feet of Gross Floor Area (as defined in the Master Declaration);

24. Any home improvement store (i.e., a store used for the sale and display of home improvement items such as paint, wallpaper, lumber, kitchen cabinets, bathroom cabinets, plumbing fixtures and materials, garden tools, and/or other such similar items) which contains more than Eight Thousand

-2-

Case ID: 170902409

Six Hundred (8,600) square feet of Gross Floor Area (as defined in the Master Declaration);

25. Nursery;

26. Any hardware store which contains more than Eight Thousand Six Hundred (8,600) square feet of Gross Floor Area (as defined in the Master Declaration);

27. Motion Picture theater(s); or

28. Sporting goods, recreational goods and equipment.

PHOTOGRAPHED
October 17, 1991 12:32pm

-3-

Exhibit B

*EXHIBIT "B"*

Case ID: 170902409

Commonwealth Land Title Insurance Co.
1700 Market Street - Suite 2110
Philadelphia, PA 19103

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:



51287540
Page: 1 of 149
10/11/2005 11:31AM

After Recording Return to:
Land America Financial Group
450 South Orange Avenue, Suite 170
Orlando, FL 32801
Attention: IRIS CEPEDA  04·459

This Document Recorded          Doc Id: 51287540
10/11/2005    State RTT: 10,750.00    Receipt #: 444232
11:31AM       Local RTT: 0.00         Rec Fee: 196.50
Doc Code: 0   Commissioner of Records, City of Philadelphia

## QUITCLAIM DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Chi-Chi's Inc., a corporation organized and existing under the laws of the State of Delaware, (the "Grantor"), hereby REMISES, RELEASES, CONVEYS, ASSIGNS AND FOREVER QUITCLAIMS to BV Development Superstition RR, LLC, a New Mexico limited liability company, having an address of 5309 Village Creek Drive, Suite 400, Plano, TX 75093 the following described real property situated in Philadelphia County, Pennsylvania:

See Exhibit A attached hereto and made a part hereof.

and all buildings and other improvements located thereon, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging to said Grantor.

This Quitclaim Deed is made without recourse, representation or warranty by Grantor, whether express or implied, and all warranties and representations that may exist or apply under statutory or common law are hereby disclaimed and excluded to the maximum extent allowed by law. This Quitclaim Deed is being executed and delivered pursuant to, and this Quitclaim Deed and the transfer being made pursuant hereto are subject to the terms and provisions of, that certain Order Under 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 (I) Authorizing The Debtors To Enter Into Sale Agreement Pursuant To Which the Right to Sell the Debtors' Interest In Its Real Property and To Direct and Designate the Assignment of the Debtors' Interests in the Leases For Certain of Their Leased Real Property Which Will Be Sold Free And Clear Of Claims, Liens And Encumbrances, (II) Approving A Process For The Subsequent Sale Of The Real Property And Assumption And Assignment Of The Leases For Such Leased Real Property To Designees, and (III) Granting Other Relief, dated September 7, 2004 and entered in Chapter 11 Case No. 03-13063 (Related Docket No. 981), In re Chi-Chi's, Inc., et al., Debtors, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court Order"), including that certain Designation Rights Agreement attached to the Bankruptcy Court Order as Exhibit A, a copy of which Bankruptcy Court

Order (including such Designation Rights Agreement attached thereto as Exhibit A), has been recorded in the Official Records or is being recorded substantially concurrently herewith. Notwithstanding the foregoing provisions of this Quitclaim Deed (i) nothing herein is intended to or shall affect the rights or obligations of any person or entity under the Bankruptcy Court Order (including such Designation Rights Agreement attached thereto as Exhibit A), (ii) nothing herein shall expand the rights, obligations or liabilities of Grantor beyond those contained in the Bankruptcy Court Order and Designation Rights Agreement, and (iii) any and all rights that Grantor may have against prior owners of the real property conveyed hereby under warranties of title benefiting Grantor shall be deemed included in this conveyance to the grantee, without, however, any recourse, representation or warranty, either express or implied, by Grantor with respect thereto, including without limitation as to the existence, extent, quality or value of any such warranties of title.

Dated: _September 8, 2005_

CHI-CHI'S INC., a Delaware corporation

By: _____
Name: _Anthony G. Baril_
Its: _President & Treasurer_

Grantor's Address:
2701 Alton Parkway
Irvine, California 92606



2073346
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073347
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073348
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073349
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073350
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073351
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073352
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073353
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073354
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073355
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073356
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073357
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073358
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073359
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073360
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

2073361
CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER TAX
OCT - 7'05
999.99
P.O. 11394

Case ID: 170902409



| Serial no. | Stamp | Date | Number | Amount |
| --- | --- | --- | --- | --- |
| 207362 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207363 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207364 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207365 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207366 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207367 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207368 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207369 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207370 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207371 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207372 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207373 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207374 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207375 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207376 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207377 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 999.99 |
| 207378 | CITY OF PHILADELPHIA DEPARTMENT OF REVENUE REALTY TRANSFER TAX | OCT-7'05 | P.O.11394 | 250.32 |

STATE OF _CALIFORNIA_)
              ) SS.
COUNTY OF _ORANGE_)

On this _8th_ day of _SEPTEMBER_, in the year 2005, before me, the undersigned, a Notary Public in and for said County and State, personally appeared _ANTHONY G. BARILE_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. *President and Treasurer of CHI-CHI's Inc, a Delaware corporation.

Signature _C S CLARK_

_C S CLARK_
Name (Typed or Printed)
Notary Public in and for said County and State

Mail Subsequent Tax Bills To:
_The Address of the Grantee:_
BV Development Superstition RR, LLC
c/o The Anz Company
5309 Village Creek Drive, Suite 400
Plano, TX 75093
Attn: Brett Anz

C. S. CLARK
Commission # 1388840
Notary Public - California
Orange County
My Comm. Expires Dec 6, 2006

## EXHIBIT A
## LEGAL DESCRIPTION
### Franklin Mills, PA

ALL THAT CERTAIN, lot or piece of ground, with the buildings and improvements thereon erected, situate in Philadelphia County, Pennsylvania and more particularly described in accordance with a Boundary Topographic Survey made by Bach Associates, PC Inc. dated 8/25/2004, as follows, to wit:

Beginning at a point the following courses and distances from a point being the intersection of the extended Easterlymost street line of Woodhaven Road (State Highway 0063) as widened (variable width) and Southerlymost street line of Knights Road (State Highway 1015) (100' wide):

A) N 63°34'27" E, a distance of 2,019.81 feet to the aforementioned point of beginning.

THENCE 1) on a curve to the left having a radius of 577.00' and a chord which bears N 07°13'57" W, and a length of 226.87' to a point of reverse curvature;

THENCE 2) on a curve to the right having a radius of 28.93' and a chord which bears N 25°41'59" E, and a length of 40.38 to a point of compound curvature;

THENCE 3) on a curve to the right having a radius of 407.48' and a chord which bears N 81°44'57" E and a length of 166.37' to a point;

THENCE 4) S 86°28'17" E, a distance of 45.59 to a point of curvature;

THENCE 5) on a curve to the right having a radius of 28.93' and a chord which bears S 43°17'00" E, and a length of 39.59 to a point of compound curvature;

THENCE 6) on a curve to the right having a radius of 1,539.07' and a chord which bears S 05°08'27" W and a length of 280.91' to a point;

THENCE 7) N 82°36'39" W, a distance of 202.76' to the first mentioned point of beginning.

CONTAINING 66,906.29 SF (Philadelphia District STD.) 67,248.80 SF (U.S. STD.)

Being the same premises which Franklin Mills Residual Limited Partnership, f/k/a Liberty Mills Residual Limited Partnership, a District of Columbia limited partnership, by Deed dated 11/4/91 and recorded 11/8/91 in Philadelphia County in Deed Book FHS 1981, Page 235 conveyed unto Chi-Chi's U.S.A., Inc., a Kentucky corporation, in fee.

And whereas Chi-Chi's U.S.A., Inc., a Kentucky corporation subsequently merged with Chi-Chi's, Inc., a Delaware corporation and the successor corporation is Chi-Chi's, Inc., a Delaware corporation.

599 Franklin Mills Circle
Franklin Mills, PA

| | BOOK NO. | PAGE NO. |
|---|---|---|

# PHILADELPHIA REAL ESTATE
# TRANSFER TAX CERTIFICATION

| DATE RECORDED |
|---|
| CITY TAX PAID |

Complete each section and file in duplicate with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed, (2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A. CORRESPONDENT — All inquiries may be directed to the following person:**

| NAME | TELEPHONE NUMBER: |
|---|---|
| BV Development Superstition RR, LLC | AREA CODE ( ) |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5309 Village Creek Drive - 3400 | Plano | TX | 75093 |

**B. TRANSFER DATA**

| | DATE OF ACCEPTANCE OF DOCUMENT: |
|---|---|
| GRANTOR(S)/LESSOR(S) | GRANTEE(S)/LESSEE(S) |
| Chi-Chi's Inc. | BV Development Superstition RR, LLC |

| STREET ADDRESS | STREET ADDRESS |
|---|---|
| 2701 Alton Parkway | 5309 Village Creek Drive - #400 |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| Irvine | CA | 92606 | Plano | TX | 75093 |

**C. PROPERTY LOCATION**

| STREET ADDRESS | CITY, TOWNSHIP, BOROUGH |
|---|---|
| 599 Franklin Mills Circle | City of Philadelphia |

| COUNTY | SCHOOL DISTRICT | TAX PARCEL NUMBER |
|---|---|---|
| Philadelphia | Philadelphia | 88-2-696400 |

**D. VALUATION DATA**

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| $1,075,000.00 | + $0.00 | = $1,075,000.00 |
| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
| $251,200.00 | x 3.37 | = $846,544.00 |

**E. EXEMPTION DATA**

| 1A. AMOUNT OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED |
|---|---|
| None | 100% |

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____
    (NAME OF DECEDENT)                                    (ESTATE FILE NUMBER)

☐ Transfer to Industrial Development Agency.

☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).

☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ _____.

☐ Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____ , Page Number _____ . Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).

☐ Corrective deed (Attach copy of the prior deed).

☐ Other (Please explain exemption claimed, if other than listed above.) _____
    _____
    _____

*Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.*

| SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY | DATE |
|---|---|
| | 9/8/05 |

82-127 (Rev.) (SEE REVERSE)

Case ID: 170902409

Exhibit C

*EXHIBIT "C"*

| ZONING/USE PERMIT | . CITY OF PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS 1401 JOHN F KENNEDY BLVD PHILADELPHIA, PA 19102-1667 | PERMIT NUMBER 773957 | |
|---|---|---|---|
| SUBJECT TO REVOCATION IF FULL INFORMATION IS MISREPRESENTED OR NOT PROVIDED | | FEE $375.00 | DATE 07/28/17 |

LOCATION OF WORK: 00599  FRANKLIN MILLS CIR PHILADELPHIA, PA 19154-3105   ZONING CLASSIFICATION CA-2

| OWNER BV DEVELOPMENT SUPERSTITI SUITE E180 PHOENIX, AZ 85018 | APPLICANT FOX ROTHSCHILD LLP 10 SENTRY PARKWAY BLUE BELL, PA 19422 | PLAN EXAMINER  CAITLIN MEST |
|---|---|---|
| | | ZONING BOARD OF ADJUSTMENT DECISION CALENDAR # DATE |

THIS PERMIT DOES NOT AUTHORIZE ANY CONSTRUCTION UNTIL RELATED CONSTRUCTION PERMITS ARE ISSUED

UNDER REGULATIONS OF THE PHILADELPHIA ZONING ORDINANCE FOR
ZONING APPROVAL
FOR THE ERECTION OF A DETACHED BUILDING. SIZE AND LOCATION AS SHOWN ON APPROVED PLANS.


USE REGISTRATION
FOR A MEDICAL MARIJUANA DISPENSARY WITH 66 ACCESSORY PARKING SPACES, OF WHICH FIVE ARE ACCESSIBLE (ONE (1) SAPCE IS VAN-ACCESSIBLE) AND SIX (6) ARE PREFERENTIAL PARKING SPACES. NO SIGNS ON THIS APPLICATION.


SUBJECT TO THE FOLLOWING PROVISOS AS ESTABLISHED BY THE ZONING BOARD OF ADJUSTMENT:


ANY PERSON AGGREIVED BY THE ISSUANCE OF THIS PERMIT MAY APPEAL TO THE ZONING BOARD OF ADJUSTMENT (ZBA). FOR INSTRUCTIONS ON FILING AN APPEAL, PLEASE CONTACT THE ZBA AT 215-686-2429 OR 215-686-2430.

IT SHALL BE THE OWNER'S RESPONSIBILITY TO SECURE THE APPROVAL OF THE PHILADELPHIA HISTORICAL COMMISSION PRIOR TO ANY ALTERATION TO A HISTORIC PROPERTY. TO CHECK THE HISTORIC STATUS OF A PROPERTY, CALL THE PHILADELPHIA HISTORICAL COMMISSION AT 215-686-7660.

FOR ESTABLISHMENTS THAT PREPARE AND SERVE FOOD: APPLICANTS MUST OBTAIN ALL NECESSARY APPROVALS FROM THE HEALTH DEPARTMENT. SEPARATE PLAN REVIEWS AND FEES MAY BE REQUIRED. CONTACT THE PHILADELPHIA DEPARTMENT OF PUBLIC HEALTH - ENVIRONMENTAL HEALTH SERVICES / OFFICE OF FOOD PROTECTION: 321 UNIVERSITY AVE. - 2ND Floor, PHILADELPHIA, PA  19104      TELEPHONE NUMBER: (215) 685-7495

LIMITATIONS:
IN CASES WHERE NO CONSTRUCTION OR INTERIOR ALTERATIONS ARE INVOLVED: THIS PERMIT BECOMES INVALID SHOULD THIS . USE NOT START WITHIN SIX (6) MONTHS FROM THE DATE OF ISSUANCE OR THE DATE OF ZONING BOARD OF ADJUSTMENT DECISION, WHICHEVER COMES FIRST.

IN CASES WHERE CONSTRUCTION OR INTERIOR ALTERATIONS ARE INVOLVED: THIS PERMIT BECOMES INVALID SHOULD CONSTRUCTION NOT START WITHIN THREE (3) YEARS FROM THE DATE OF ISSUANCE OR THE DATE OF ZONING BOARD OF ADJUSTMENT DECISION, WHICHEVER COMES FIRST.


## THIS PERMIT IS NOT A CERTIFICATE OF OCCUPANCY OR A LICENSE.

ALL PROVISIONS OF THE CODE AND OTHER CITY ORDINANCES MUST BE COMPLIED WITH, WHETHER SPECIFIED HEREIN OR NOT. THIS PERMIT CONSTITUTE APPROVAL FROM ANY STATE OR FEDERAL AGENCY, IF REQUIRED.

Case ID: 170902409

| ZONING/USE PERMIT | CITY OF PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS 1401 JOHN F KENNEDY BLVD PHILADELPHIA, PA 19102-1667 | PERMIT NUMBER 773957 | |
|---|---|---|---|
| SUBJECT TO REVOCATION IF FULL INFORMATION IS MISREPRESENTED OR NOT PROVIDED | | FEE $375.00 | DATE 07/28/17 |

LOCATION OF WORK: 00599  FRANKLIN MILLS CIR PHILADELPHIA, PA 19154-3109  ZONING CLASSIFICATION CA-2

| OWNER BV DEVELOPMENT SUPERSTITI SUITE E180 PHOENIX,AZ 85018 | APPLICANT FOX ROTHSCHILD LLP 10 SENTRY PARKWAY BLUE BELL, PA 19422 | PLAN EXAMINER   CAITLIN MEST |
|---|---|---|
| | | ZONING BOARD OF ADJUSTMENT DECISION CALENDAR # DATE |

**THIS PERMIT DOES NOT AUTHORIZE ANY CONSTRUCTION UNTIL RELATED CONSTRUCTION PERMITS ARE ISSUED**

UNDER REGULATIONS OF THE PHILADELPHIA ZONING ORDINANCE FOR
ZONING APPROVAL
FOR THE ERECTION OF A DETACHED BUILDING. SIZE AND LOCATION AS SHOWN ON APPROVED PLANS.

USE REGISTRATION
FOR A MEDICAL MARIJUANA DISPENSARY WITH 66 ACCESSORY PARKING SPACES, OF WHICH FIVE ARE ACCESSIBLE (ONE (1) SAPCE IS VAN-ACCESSIBLE) AND SIX (6) ARE PREFERENTIAL PARKING SPACES. NO SIGNS ON THIS APPLICATION.

SUBJECT TO THE FOLLOWING PROVISOS AS ESTABLISHED BY THE ZONING BOARD OF ADJUSTMENT:

**ANY PERSON AGGREIVED BY THE ISSUANCE OF THIS PERMIT MAY APPEAL TO THE ZONING BOARD OF ADJUSTMENT (ZBA). FOR INSTRUCTIONS ON FILING AN APPEAL, PLEASE CONTACT THE ZBA AT 215-686-2429 OR 215-686-2430.**

IT SHALL BE THE OWNER'S RESPONSIBILITY TO SECURE THE APPROVAL OF THE PHILADELPHIA HISTORICAL COMMISSION PRIOR TO ANY ALTERATION TO A HISTORIC PROPERTY. TO CHECK THE HISTORIC STATUS OF A PROPERTY, CALL THE PHILADELPHIA HISTORICAL COMMISSION AT 215-686-7660.

FOR ESTABLISHMENTS THAT PREPARE AND SERVE FOOD: APPLICANTS MUST OBTAIN ALL NECESSARY APPROVALS FROM THE HEALTH DEPARTMENT. SEPARATE PLAN REVIEWS AND FEES MAY BE REQUIRED. CONTACT THE PHILADELPHIA DEPARTMENT OF PUBLIC HEALTH - ENVIRONMENTAL HEALTH SERVICES / OFFICE OF FOOD PROTECTION: 321.UNIVERSITY AVE. - 2ND Floor, PHILADELPHIA, PA  19104     TELEPHONE NUMBER: (215) 685-7495

LIMITATIONS:
IN CASES WHERE NO CONSTRUCTION OR INTERIOR ALTERATIONS ARE INVOLVED: THIS PERMIT BECOMES INVALID SHOULD THIS USE NOT START WITHIN SIX (6) MONTHS FROM THE DATE OF ISSUANCE OR THE DATE OF ZONING BOARD OF ADJUSTMENT DECISION, WHICHEVER COMES FIRST.

IN CASES WHERE CONSTRUCTION OR INTERIOR ALTERATIONS ARE INVOLVED: THIS PERMIT BECOMES INVALID SHOULD CONSTRUCTION NOT START WITHIN THREE (3) YEARS FROM THE DATE OF ISSUANCE OR THE DATE OF ZONING BOARD OF ADJUSTMENT DECISION, WHICHEVER COMES FIRST.

**THIS PERMIT IS NOT A CERTIFICATE OF OCCUPANCY OR A LICENSE.**

ALL PROVISIONS OF THE CODE AND OTHER CITY ORDINANCES MUST BE COMPLIED WITH, WHETHER SPECIFIED HEREIN OR NOT. THIS PERMIT CONSTITUTE APPROVAL FROM ANY STATE OR FEDERAL AGENCY, IF REQUIRED.

Case ID: 170902409

| Report Date | 07/28/2017 12:02 PM | | | Submitted By | | | | | Page 1 |
|---|---|---|---|---|---|---|---|---|---|

| Trn # | 2363250 | | | Trn Date | 07/26/2017 12:01 | Template Type BLDG | A/P # | 773957 |
|---|---|---|---|---|---|---|---|---|
| Customer | FOX ROTHSCHILD LLP | | | | | | | |
| Address | 10 SENTRY PARKWAY | | | Cash Payment | | | | 287.00 |
| | SUITE 200 | | | Check # | 543347 | | | |
| | BLUE BELL | PA | 19422 | U.S.A. | | | | |

| Fees Item | | Cost Budget # | | | Amount | Fee Amount Due |
|---|---|---|---|---|---|---|
| NEW CONSTRUCTION PERMIT FEE | | 3612 | | | 275.00 | 275.00 |
| SCANNING CHARGE FEE | | 7169 | | | 12.00 | 12.00 |
| | | | Total Amount | | 287.00 | 287.00 |
| | | | Amount Paid | | 287.00 | |
| | | | Total Amount Due | | 0.00 | |

**MEDICAL MARIJUANA DISPENSARY INSPECTION REPORT**

DATE OF INSPECTION: 5-4-17

LOCATION OF PROPOSED MEDICAL MARIJUANA DISPENSARY: 599 Franklin mills Circle
AP# 773957

IS THE PROPOSED MEDICAL MARIJUANA DISPENSARY WITHIN <u>500 FEET</u> OF ANOTHER EXISTING REGULATED USE? (see reverse for definitions and specific use types)

☒ NO      ☐ YES      If yes, please list location(s) and type(s) of regulated use(s):

IS THE PROPOSED MEDICAL MARIJUANA DISPENSARY WITHIN <u>500 FEET</u> OF THE NEAREST LOT LINE OF A LOT CONTAINING ANY PROTECTED USE?

☒ NO      ☐ YES      If yes, please select type(s) of protected use and note location(s):

☐ SCHOOLS (UP TO GRADE 12, INCL. ADJUNCT RECREATIONAL & PLAYING FIELDS)
☐ PUBLIC PLAYGROUND
☐ PUBLIC SWIMMING POOL
☐ PUBLIC PARK
☐ PUBLIC RECREATION CENTER
☐ PUBLIC LIBRARY

INSPECTOR:      SUPERVISOR:

Keith Billie            LAKeshia Thomas

Case ID: 170902409

*EXHIBIT "D"*

# Franklin Mills Residual Limited Partnership

March 29, 2017

Via: Federal Express and Email

Chi-Chi's U.S.A., INC.
Plainview Triad East
10206 Linn Station Road
P.O. Box 32338
Louisville, Kentucky 40232-2338
ATTN: Legal Department

TradeCon, LLC
4456 E. Camelback Rd.
Suite E-140
Phoenix, AZ 85018
ATTN: Eric Rand Sanchez

Re:     Response to Notice for Right of First Refusal
        955 Franklin Mills Circle, Philadelphia, Pennsylvania (Former Chi-Chi's Restaurant)

Dear Sir or Madam,

This letter is in response to your notice (the "Offer Notice") dated March 20, 2017 addressed to Franklin Mills Residual Limited Partnership.

Regarding the proposed transfer of the subject property as outlined in the Offer Notice and pursuant to a Right of First Refusal as provided in the Deed Restrictions to the Special Warranty Deed ("Deed Restrictions") from Franklin Mills Residual Limited Partnership as Grantor ("Developer") to Chi-Chi's U.S.A., Inc. as Grantee (predecessor-in-interest to DV Development Superstition RR, LLC, the "Current Owner") dated October 16, 1991, Developer has elected not to exercise its Right of First Refusal as contained in said Deed Restrictions as to the proposed transfer addressed in the Offer Notice. Developer's election not to exercise is only in relation to the proposed transfer addressed in the Offer Notice and Developer specifically retains all other rights pertaining to the property, including any right of first refusal for any future transfers of the property and right of first refusal should the terms (including desired selling price) as stated in the Offer Notice be modified.

Also, let this letter serve as notification that the intended use of the parcel by PharmaCann Penn, LLC, the prospective purchaser per the Purchase and Sale Agreement dated March 17, 2017, is not a Permitted Use or an approved Proposed Use pursuant to the Deed Restrictions. A medical marijuana dispensary is strictly prohibited in accordance with the Deed Restrictions to the Special Warranty Deed.

Upon Closing, please provide the contact information for the transferee, as well as a copy of the Deed of the transaction.

Cordially,

Sundesh Shah
Senior Vice President
Simon Property Group

Case ID: 170902409

Exhibit E

*EXHIBIT "E"*

This letter does not constitute a complete statement of Developer's rights in connection with this matter. Nothing contained herein shall be construed to constitute an express or implied waiver of any rights, remedies or defenses of Developer, at law or in equity, all of which are expressly reserved.

Sincerely,
Franklin Mills Associates Limited Partnership

James C. Owen
Senior Staff Attorney

Cc:   James Ross
Jocelyn Gubler
Sundesh Shah
J. Drew Price

Franklin Mills Advisory Council
C/o Michael A. Green
Green, Silverstein & Groff, LLC
215 South Broad Street, Suite 500
Philadelphia, PA 19107

3