**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


|  |  |  |
|---|---|---|
| | : | |
| **PHARMACANN PENN, LLC,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 17-4625** |
| **BV DEVELOPMENT** | : | |
| **SUPERSTITION RR, LLC, et al.** | : | |
| *Defendants*. | : | |

## AMENDED MEMORANDUM

PRATTER, J.                                                                                      March 16, 2018

### INTRODUCTION

The deed to a property at a shopping center prohibits using the property as a drug store or for any "unlawful" purpose. PharmaCann Penn, the new owner of the property, sued in state court, seeking a declaratory judgment that it may open a medical marijuana dispensary on the property despite these deed restrictions.

The defendants (PharmaCann's predecessors in interest and the partnership entities that operate the shopping center) removed the case to federal court. PharmaCann then moved to remand, challenging the defendants' assertion of federal question jurisdiction, questioning the removal procedure, and invoking doctrines of abstention. For the reasons that follow, the Court concludes that (1) it has federal question jurisdiction, (2) the removal process was proper, and (3) abstention doctrines do not control the case. The motion to remand to state court is therefore denied.

### BACKGROUND

The property in question is part of the Franklin Mills shopping center (now called the Philadelphia Mills). The shopping center is managed by defendants Simon Property Group,

Franklin Mills Associates, and Franklin Mills Residual.  Defendants Western Franklin Mills and BV Development Superstition are previous owners of the property.

In 2017, BV Development conveyed the property to PharmaCann.  PharmaCann then obtained a permit from the Commonwealth of Pennsylvania to operate a medical marijuana dispensary pursuant to the Pennsylvania Medical Marijuana Act, 35 P.S. § 10231.101.  In addition, the City of Philadelphia granted PharmaCann a zoning permit for the dispensary.

The deed to PharmaCann's property contains several restrictions.  Two restrictions potentially block PharmaCann from opening a "medical marijuana dispensary"; hence, this case.  First, the deed prohibits "[a]ny activity or use which is unlawful."  This prohibition is the basis of the parties' dispute over federal question jurisdiction, discussed below.  Second, the deed prohibits PharmaCann from operating a drug store, defined in part as "a store used for the sale and display of drugs."  This prohibition bears on the merits of the case and, thus, is not addressed in this Memorandum.

PharmaCann sued in state court for a declaratory judgment interpreting the deed's prohibitions on "unlawful" uses and on "drug stores" as inapplicable.  Franklin Mills removed to this Court.  After a motion to remand and an amended notice of removal, PharmaCann filed the amended motion to remand at issue now.

ANALYSIS

PharmaCann's motion to remand presents three questions:

1) Whether the Court has federal question jurisdiction because existing federal drug laws render PharmaCann's marijuana dispensary "unlawful" under the deed.

2) Whether two defendants who did not consent to the removal were fraudulently joined.

3) Whether the abstention doctrines emanating from the *Younger* or *Burford* cases counsel against hearing this case in federal court.

The Court addresses each question in turn and concludes that (1) the Court has federal question jurisdiction over this case; (2) the removal process was proper because the only defendants who did not consent to removal were fraudulently joined; and (3) abstention doctrines do not control this case.[1]

## I.      Federal Question Jurisdiction

The deed to PharmaCann's property prohibits "unlawful" uses.  That single term opens the door for federal question jurisdiction by teeing up a fundamental clash between state and federal law in this case.

Pennsylvania recently established a system for certain medical marijuana use, joining a substantial number of states in the Union to do so.  *See* 35 P.S. § 10231.101 *et seq*.  The federal Controlled Substances Act, on the other hand, flatly prohibits the distribution of marijuana, 21 U.S.C. § 841(a)(1), and recognizes no "accepted medical use" for the drug, *id.* § 812(b)(1).  In other words, "[d]espite the Commonwealth of Pennsylvania's enactment of its medical marijuana law, the distribution of marijuana remains illegal under federal law."  *United States v. Dinh*, 194 F. Supp. 3d 353, 356–57 (W.D. Pa. 2016).

Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  For the "vast bulk" of cases, this means that "federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

In some cases, however, a court has federal question jurisdiction even when the cause of action comes from state law.  As the Supreme Court has recognized, a federal court should hear state-law claims "that nonetheless turn on substantial questions of federal law, and thus justify

---

[1]      Because the Court concludes that federal question jurisdiction exists, the Court necessarily rejects PharmaCann's argument that the removal was so frivolous as to merit fee-shifting.

resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005). In those instances, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This case meets all four requirements.

### A. Necessarily Raised

The federal question of the dispensary's lawfulness is necessarily raised because a court must consider and ultimately apply federal law in order for PharmaCann to get the relief it seeks. In *Gunn v. Minton*, 568 U.S. 251 (2013), a malpractice case against an attorney depended on whether a client would have prevailed in a previous case had the attorney made a specific patent-law argument. Thus, the "resolution of the federal patent question" was necessary for the client to show that the attorney's careless failure to make the federal patent law argument caused the client's loss. *Id.* at 259. Likewise, in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), the federal question of the constitutionality of a government bond issuance was necessary to resolve a shareholder's state-law claim that a corporation had unlawfully purchased the government bonds. *Id.* at 199.

Similarly, here, the resolution of the federal question — namely, whether a medical marijuana dispensary is "unlawful" under the Controlled Substances Act — is necessary to decide whether the dispensary is an "unlawful" use under the deed. Indeed, PharmaCann seeks a court's declaration that its marijuana dispensary is lawful, which requires a court to apply federal law to PharmaCann's chosen use. *Cf. In re Processed Egg Prods. Antitrust Litig.*, 836 F.

Supp. 2d 290, 299 n.10 (E.D. Pa. 2011) (finding no federal question jurisdiction when "the purported federal issue" only "*might* arise").

### B. Actually Disputed

The parties here obviously and actually dispute whether federal law prohibits dispensing medical marijuana. Franklin Mills has filed a motion to dismiss in which it argues as much, and PharmaCann's counsel suggested at oral argument on the removal and remand issues that his client would dispute that point on the merits.

### C. Substantial

This federal issue is substantial. "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. The federal issue must be substantial "to the federal system as a whole," *Gunn*, 568 U.S. at 260, not only "to the particular parties in [the] case," *id.* at 264.

In *Grable*, the notice requirements imposed before the IRS could seize the property of tax delinquents amounted to a substantial federal issue. *See Grable*, 545 U.S. at 315. The Supreme Court reasoned that the Government and private actors had interests in (1) the "prompt and certain collection of delinquent taxes," *id.* (quoting *United States v. Rodgers,* 461 U.S. 677, 709 (1983)); and (2) review of their disputes by "judges used to federal tax matters," *id.*

On both points, the federal question in this case is substantial. First, the need to pursue certainty on the legal status of marijuana dispensaries looms large. By the Court's count, 29 states have authorized some form of medical marijuana and nine have authorized "recreational" marijuana. The federal status of these state schemes could be clarified or brought into sharper focus by a ruling on whether PharmaCann's proposed dispensary violates federal law.

Second, the issues at hand counsel in favor of review by a court used to federal drug law and versed in principles of federalism. The immediate law to be applied is the federal Controlled Substances Act. On a deeper level, too, federalism principles lurk in the background of this dispute. If a court were to rule that PharmaCann's dispensary violated federal law, the Supremacy Clause could cast doubt on the validity of dozens of state marijuana schemes. Such a ruling, in other words, would require a court to consider the delicate comity between our federal and state systems. The advantages of hearing this kind of federalism-adjacent dispute in a federal forum, free from the pressures of judicial election politics, are obvious.

### D. Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance

Because this kind of case is exceedingly rare, resolving the federal issue will not upset the usual division of labor between state and federal courts.

In *Grable*, the Supreme Court concluded that federal question jurisdiction existed over a state title case because of how unusual the case was: "it will be the rare state title case that raises a contested matter of federal law," so a finding of federal jurisdiction "to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315.

This dispute presents one of *Grable*'s "rare state title case[s]" raising "a contested matter of federal law." Consider the peculiar set of circumstances present here: (1) federal law flatly prohibits certain conduct, (2) state law affirmatively legalizes and licenses that same conduct, and (3) a private actor has chosen to follow only the state law. The Court is hard-pressed to

imagine another case in quite this posture.[2]  Therefore, hearing this case in a federal forum will not disrupt the federal-state balance approved by Congress.

Congressional legislation on marijuana — both successfully enacted and merely proposed — further demonstrates Congress's desire to make drug law a federal issue.  To begin, the Controlled Substances Act, which expressly prohibits the distribution of marijuana, 21 U.S.C. § 841(a)(1), has been on the books for over 40 years.  *Cf. TGaS Advisors, LLC v. Zensights, LLC*, No. 16-cv-1870, 2016 WL 2594643, at *4 (E.D. Pa. May 5, 2016) (holding that federal question jurisdiction existed over a contract case that presented a copyright question because the America Invents Act of 2011 showed Congress's "recent efforts to ensure parties a federal forum for claims involving copyright").  What is more, recent supposed efforts in Congress to partially remove marijuana law from the purview of the federal courts arguably have failed.  *See* Ending Federal Marijuana Prohibition Act of 2017, H.R. 1227, 115th Cong.; Marijuana Justice Act of 2017, S. 1689, 115th Cong.; Ending Federal Marijuana Prohibition Act of 2015, S. 2237, 114th Cong.; Regulate Marijuana like Alcohol Act, H.R. 1013, 114th Cong. (2015).[3]

---

[2]  To see how unusual this situation is, consider how odd it would be for a state to enact a licensing scheme allowing companies to fix prices in violation of the Sherman Act.  Or for a state to issue licenses to hunt wildlife protected under the Endangered Species Act.

[3]  At the oral argument on this remand motion, an effort was undertaken by counsel to introduce into the mix (1) the perceived (by some) political popularity of altering the status of marijuana, (2) the considerable physical relief offered by some variations of marijuana to people suffering from certain conditions, and (3) the supposed passivity of law-enforcement personnel. Of course, the federal judiciary is charged with the obligation to resist just such pitches that are best made to those who write laws, perhaps those who are charged with enforcing them — but not those who have accepted a lifetime position to resist deciding disputes on the basis of political popularity or assessments of enforcement energy or appetite, so long as enactment or enforcement are not unconstitutionally selective.

The Court fails to see how these arguments bear on the narrow, preliminary question of whether federal jurisdiction exists in this case.  Nothing in this opinion should be taken as a pronouncement on the merits of this dispute.  Even on the merits, however, a word of caution is in order.  It is not this Court's role to second-guess the political wisdom of federal legislation on marijuana.  *Cf. Washington v. Sessions*, No. 17-CV-5625, 2017 WL 1114758 (S.D.N.Y. Feb. 26, 2018) (rejecting a rational-basis challenge to federal law categorizing marijuana as a Schedule I

In sum, federal courts have jurisdiction to hear disputed, necessarily raised, and substantial questions about the application of federal drug law. Therefore, this Court has federal question jurisdiction over this dispute.

## II. Removal Procedure

PharmaCann next argues that the removal process was flawed because two defendants — Western Franklin Mills and BV Development — did not consent to the removal. "[W]hen there is more than one defendant, all must join in the removal petition." *Lewis v. Rego Co*., 757 F.2d 66, 68 (3d Cir. 1985) (applying 28 U.S.C. § 1446).

One exception to this so-called "unanimity rule" is when a defendant has been fraudulently joined. Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap-On Tools Corp.*, 913 F.3d 108, 111 (3d Cir. 1990) (quotations omitted). "But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (citations and punctuation omitted).

For the reasons that follow, both Western Franklin Mills and BV Development are fraudulently joined. Thus, their failure to consent to removal does not represent a defect in the removal process.

---

drug). Thus, the task at hand is one that concerns the conventional judicial role, nothing less and nothing more.

### *A. Fraudulent Joinder of Western Franklin Mills*

Western Franklin Mills is fraudulently joined. Western Franklin Mills is only mentioned twice in the entire complaint — and each time, only to illustrate that complete diversity is not satisfied (the removing defendants have since dropped their diversity-jurisdiction argument). Western Franklin Mills appears to have been the general partner of Franklin Mills Associates, which does have an interest in the case. But Western Franklin Mills withdrew from the partnership in 1997. At oral argument, counsel for PharmaCann conceded that his client had no present case against Western Franklin Mills. In other words, no one can make a straight-faced argument for the involvement of Western Franklin Mills in this litigation.

### *B. Fraudulent Joinder of BV Development*

On October 3, 2017, one day after the defendants were served, BV Development (the entity that sold the property to PharmaCann) entered into an agreement with PharmaCann. According to the agreement, BV Development "agree[d] with the facts stated and the claims for relief asserted" in PharmaCann's complaint in this dispute, and the parties to this agreement went so far as to agree that BV Development did "not need to answer or otherwise plead in response" to the complaint. Am. Not. Removal, Ex. H. More specifically:

- BV agreed that the deed restrictions do not apply to PharmaCann. *Id.*

- BV agreed that PharmaCann's medical marijuana dispensary is neither "unlawful" nor a "drug store." *Id.*

- BV agreed that if a court determines that the dispensary is in fact a "drug store," then the court should "invalidate and strike such a restriction" from the deed. *Id.*

- PharmaCann agreed that "BV does not need to answer or other plead in response" to the complaint. *Id.*

Despite this agreement, someone describing himself as BV Development's attorney has submitted an affidavit stating that BV Development "retains an interest in this declaratory

judgment and quiet title action," without elaborating on that interest. *See* Aff. of Jonathan Klein, Am. Mot. Remand, Ex. I. This affiant has not entered an appearance in this case.

The removing defendants argue that the agreement between BV Development and PharmaCann renders BV Development a nominal party or otherwise means that BV Development is fraudulently joined.

The cases most on point also involved defendants who entered into a side agreement with a plaintiff that conveniently appeared to defeat removal. *See Bancorp, Inc. v. Yaron*, No. 14-cv-7159, 2015 WL 4876330 (E.D. Pa. Aug. 14, 2015); *J.H. v. City of Phila.*, No. 17-cv-3520, 2018 WL 451363 (E.D. Pa. Jan. 17, 2018). In *Bancorp*, this Court articulated a two part test for fraudulent joinder: First, the Court "accept[s] as true all allegations" in the complaint, and "if there is even a possibility that a state court would find that the complaint states a cause of action" against the defendant in question, then joinder is proper. *Id.* (quoting *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006)). Second, the Court asks whether the plaintiff "intends in good faith to prosecute the action" against the allegedly fraudulently joined defendant. *Id.* At this step, the Court may "look beyond the pleadings 'to identify indicia of fraudulent joinder.'" *Id.* (quoting *Briscoe*, 448 F.3d at 219).

PharmaCann has satisfied the first part of the two-part test. Without straying from the pleadings, which allege that BV Development sold the property to PharmaCann, the Court can conclude that PharmaCann has articulated a cause of action against BV Development. At the very least, based on the complaint alone, the Court cannot conclude that "recovery from [BV Development] is a clear legal impossibility." *See Chaborek v. Allstate Fin. Servs., LLC*, 254 F. Supp. 3d 748, 751 (E.D. Pa. 2017).

The question becomes more complicated at the second part of the two-part test, when the Court "must look beyond the allegations of [PharmaCann's] complaint," including an inquiry into its conduct. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985). Here, motive and intent come to the fore. The crucial question is whether PharmaCann's conduct demonstrates that it has "no real intention in good faith to prosecute the action" against BV Development. *See Boyer*, 913 F.2d at 111.

The best evidence of PharmaCann's lack of intent to prosecute its case against BV Development is the agreement between BV Development and PharmaCann. As explained above, BV Development (1) is in complete agreement with PharmaCann's view of the facts and the law, and (2) is relieved from filing any responsive pleading in this case. Taken together, these two conditions demonstrate that PharmaCann has no intention to prosecute this case against BV Development.

**First**, BV Development's total agreement with PharmaCann's factual and legal arguments demonstrates that BV Development and PharmaCann are not "adversaries" in any common sense of the word. Indeed, BV Development's interest in the case is identical to PharmaCann's: to see that the marijuana dispensary is deemed a valid use, in order to avoid putting the sale in jeopardy. This alignment of interests sets the case apart from *J.H.*, in which a police officer defendant accused of assault "vigorously denie[d] the allegations against him." *J.H.*, 2018 WL 451636, at *4. Even though the plaintiff in *J.H.* had agreed never to enforce a judgement against the officer, the officer's reputation was still at stake in the case, thus strongly suggesting his continued interest in seeing a result in the case not fully compatible with the plaintiff's desired outcome. *Id.*

To be sure, BV Development's and PharmaCann's interests could possibly diverge in the future — if their current agreement proves unsuccessful or unfruitful. If a court rules that PharmaCann's marijuana dispensary violates the deed, then PharmaCann may seek to unwind its purchase from BV Development. Under Pennsylvania's declaratory judgment statute, therefore, PharmaCann was likely correct to name BV Development as a party with "any interest which would be affected by the declaration." *See* 42 Pa. Stat. Ann. § 7540. But *initial* compliance with a state-law joinder rule is undercut by the fast-to-follow *subsequent* agreement that brought the interests of BV Development and PharmaCann into complete harmony. In other words, compliance with Pennsylvania rules of joinder says little about PharmaCann's intent to prosecute BV Development in this case.

Nor does PharmaCann's potential, theoretical future suit against BV Development to unwind the sale change the fraudulent-joinder calculus. Such a hypothetical dispute once again differs from *J.H.*, in which the plaintiff needed to *first* obtain a verdict against the defendant officer *before* she could obtain a judgment against the City. *J.H.*, 2018 WL 451636, at *4; *cf. Minehart v. McElhinny*, No. 17-CV-3349, 2017 WL 5885730, at *5 (E.D. Pa. Nov. 28, 2017) (Brody, J.) (rejecting the argument that one defendant was fraudulently joined just because the plaintiff could "obtain complete relief" from the other defendants).

**Second**, PharmaCann's agreement to relieve BV Development from any duty to respond in the case further demonstrates that BV Development is fraudulently joined. PharmaCann's decision not to hold BV Development to any of the usual response requirements sets this case apart from *Bancorp*, in which a settlement as to some claims against two defendants did not alter the plaintiff's "expectation that [the defendants would] defend themselves" against the remaining claims. *Bancorp*, 2015 WL 4876330, at *4. Here, by contrast, PharmaCann has relieved BV

Development of any need to defend itself. Thus, BV Development is fraudulently joined, its failure to join in the removal process was of no moment, and the other defendants' removal to this Court was proper.

## III. Abstention Doctrines

Contending that the case presents issues so unique to Pennsylvania law that only a Pennsylvania court should decide them, PharmaCann argues that the Court should abstain from the case on the grounds of both the *Younger* and *Burford* doctrines. Neither doctrine warrants abstention in this case.

### A. *Younger Abstention*

The *Younger* doctrine has three requirements: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010); *see also Younger v. Harris*, 401 U.S. 37 (1971).

The doctrine "espouses a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). "[T]he key to *Younger* abstention is not the presence of parallel state proceedings, but rather the likelihood that the federal action will interfere with the ongoing state proceedings." *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 114 (3d Cir. 1999).

In this case, the only pending state court proceeding is *Keystone ReLeaf LLC v. Pa. Dep't of Health*, No. 399 M.D. 2017 (Pa. Cmwlth. 2017). In *Keystone ReLeaf*, an entity that did not receive a medical marijuana license has sued the Commonwealth and the first dispensaries to receive licenses (including PharmaCann). The unlicensed challenger has advanced a bevy of

arguments seeking to invalidate the entire licensing scheme: the licensing scheme violates due process; the licensing scheme contravenes Pennsylvania law on public contracts; the Commonwealth enforced regulatory requirements in an arbitrary and capricious manner; and the Commonwealth violated its own Right-to-Know Law.

Notably absent from that case, however, is any argument like the one here: that distributing marijuana of any kind is "unlawful" under federal law. Therefore, the third requirement of *Younger* abstention — that the state proceeding affords an opportunity to raise the federal claim — is not satisfied.

### B. Burford Abstention

In a related abstention doctrine, a federal court can decline jurisdiction where a difficult question of state law involves important state policies. *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18 (1943). "Where timely and adequate state-court review is available," a federal court "must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)). For example, in *Rucci v. Cranberry Township*, 130 Fed. App'x 572 (3d Cir. 2005), the Third Circuit Court of Appeals abstained from hearing a land-use dispute, reasoning that the "state law claims involve Pennsylvania's Municipal Planning Code and eminent domain procedures," which were "purely local" issues of a "state-law nature." *Id.* at 577.

Here, by contrast, the questions are not purely local; at least one key question on the merits is whether a medical marijuana dispensary is "unlawful" under federal law. Therefore, the requirements of *Burford* abstention are not satisfied.

## CONCLUSION

For the foregoing reasons, PharmaCann's motion to remand is denied. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE